**STATE of Tennessee, Appellee,**

v.

**James Thomas JEFFERSON, Appellant.**

Court of Criminal Appeals of Tennessee,
at Nashville.

May 24, 1996.

Permission to Appeal Denied by
Supreme Court Nov. 25, 1996.

Jeffrey A. DeVasher, Senior Assistant Public Defender, Peter D. Heil, Assistant Public Defender, Karl F. Dean, Metropolitan Public Defender, David M. Siegel, Assistant Public Defender, Nashville, for appellant.

Charles W. Burson, Attorney General & Reporter, Christina S. Shevalier, Assistant Attorney General, Victor S. Johnson, III, District Attorney General, Roger D. Moore, Cheryl A. Blackburn, Assistant District Attorneys General, Nashville, for appellee.

## OPINION

JONES, Judge.

The appellant, James Thomas Jefferson, was convicted of murder in the first degree and sentenced to life in the Department of Correction. Both the State of Tennessee and the appellant filed notices of appeal, and they both have presented issues for this Court to review.[1]

The State of Tennessee presents one issue for review. The state contends that the trial court erred by dismissing Count VI of the indictment, which alleges the offense of rape, because the state did not provide the appellant with a speedy trial as to this offense.

The appellant presents five issues for review. The issues presented are:

I. The passage of time, dispersion of witnesses, erosion of memories and loss of defense evidence rendered the conviction unreliable in violation of the federal and state constitutions.

II. The trial court erred by substituting a term of life imprisonment for the jury's verdict imposing 40 years imprisonment.

III. The trial court erred by refusing to allow Defendant to present evidence on the issue whether Defendant's lineup was conducted in an unfairly suggestive manner.

IV. The trial court erred by allowing Barbara Bolte to display her scars to the jury.

V. The evidence was insufficient to establish the elements of premeditated murder.

The appellant's conviction for premeditated murder is affirmed. This case is remanded to the trial court for a new sentencing hearing.

## HISTORY OF PRIOR PROCEEDINGS

On July 23, 1968, the Davidson County Grand Jury returned four indictments against the appellant. One indictment alleges that the appellant murdered the victim, John Robert Bolte, on or about the 15th day of June, 1968. Another alleges that the appellant raped the victim's wife, Barbara Bolte. A third indictment charged the appellant with assault with attempt to commit murder in the first degree as to Barbara Bolte. The final indictment charged the appellant with assault with attempt to commit murder in the first degree as to the Boltes' infant child, Dara Bolte.

The appellant was arrested on July 1, 1968. On July 2, 1968, the appellant petitioned the general sessions court to admit him to bail. The court denied the petition. On July 3, 1968, the appellant filed a petition in the criminal court, alleged what had occurred in the general sessions court, and

1. The Tennessee Rules of Appellate Procedure contemplate the filing of only one notice of appeal. When one party invokes the jurisdiction of the appellate court, an adverse party may raise affirmative issues. Furthermore, the rules contemplate an appellant and an appellee. Rule 13(a), Tenn.R.App.P., states: "Cross-appeals, separate appeals, and separate applications for permission to appeal are not required." *See State v. Russell*, 800 S.W.2d 169, 170–71 (Tenn. 1990); *State v. Valentine*, 659 S.W.2d 27, 29 (Tenn.Crim.App.), *per. app. denied* (Tenn.1983); *Edwards v. Hunt*, 635 S.W.2d 696, 698 (Tenn.Ct. App.), *per. app. denied* (Tenn.1982). James Thomas Jefferson will be referred to as the appellant throughout this opinion.

asked the court to admit him to bail. The criminal court refused to entertain the petition based on a statute governing successive applications for bail. The appellant then sought relief in the Tennessee Supreme Court. On January 17, 1969, the Supreme Court ruled that the petition filed in the criminal court should be considered an appeal of the proceedings conducted in the general sessions court, and the criminal court should treat the petition accordingly.[2]

The appellant was tried for the murder of Mr. Bolte. The trial commenced on October 28, 1969. When the jury could not reach a unanimous verdict, the trial court declared a mistrial.

The second trial for the murder of Mr. Bolte commenced on January 18, 1971. The jury convicted the appellant of murder in the first degree and sentenced the appellant to confinement for ninety-nine (99) years in the Department of Correction. This Court affirmed the appellant's conviction and sentence.[3] However, the case was remanded to the trial court for an evidentiary hearing on the allegation contained in the appellant's plea in abatement, i.e., whether African-Americans were systematically excluded from the grand jury that indicted him and the petit jury that convicted him. The Supreme Court initially granted the appellant's petition for the writ of certiorari to review this Court's order of remand. The Tennessee Supreme Court summarily affirmed this Court's judgment.[4]

On remand, the trial court held a hearing on the plea in abatement on March 22 and 23, 1976. The trial court took the matter under advisement. On April 7, 1976, the trial court overruled the plea in abatement.

This Court affirmed the judgment of the trial court.[5] The Supreme Court denied the appellant's petition for the writ of certiorari on October 11, 1977.

On April 1, 1982, the appellant filed a petition for the writ of habeas corpus in the United States District Court for the Middle District of Tennessee. The appellant alleged that African-Americans were systematically excluded from the grand jury that indicted him and the petit jury that convicted him. On September 28, 1984, an evidentiary hearing was conducted on the grounds raised in the petition. On March 30, 1985, the district court ruled that the appellant established a prima facie case of systematic exclusion of African-Americans from the grand jury that indicted him, and the warden, the defendant, had failed to rebut the prima facie case.[6] The State of Tennessee was given ninety (90) days to reindict the appellant or grant him his freedom.[7] On April 30, 1985, the district court stayed the judgment pending appeal to the Sixth Circuit. The Sixth Circuit Court of Appeals reversed the judgment of the trial court.[8] The Sixth Circuit ruled that the appellant had not exhausted his state remedies before filing the habeas corpus action.[9] The case was remanded to the district court with instructions to dismiss the habeas corpus action without prejudice.[10]

The appellant filed a post-conviction action in Davidson County. The trial court denied the appellant relief from either his conviction or sentence. This Court affirmed the judgment of the trial court.[11] The Supreme Court denied the appellant's application for permission to appeal on April 3, 1989.

The second petition for the writ of habeas corpus was filed in the District Court for the

2. *State ex rel. Jefferson v. State,* 222 Tenn. 413, 436 S.W.2d 437 (1969) (the case was remanded to the criminal court where bond was set).

3. *See State v. Jefferson,* 529 S.W.2d 674 (Tenn. 1975).

4. *Jefferson,* 529 S.W.2d at 677.

5. *Jefferson v. State,* 559 S.W.2d 649 (Tenn.Crim. App.), *cert. denied* (Tenn.1977).

6. *Jefferson v. Dutton,* 607 F.Supp. 355 (M.D.Tenn.1985).

7. *Jefferson,* 607 F.Supp. at 361.

8. *Jefferson v. Dutton,* No. 85–5335, 1986 WL 17211 (6th Cir. June 10, 1986).

9. *Jefferson,* 1986 WL 17211 at *1–2.

10. *Jefferson,* 1986 WL 17211 at *2.

11. *State v. Jefferson,* 769 S.W.2d 875 (Tenn.Crim. App.1988), *per. app. denied* (Tenn.1989).

Middle District of Tennessee on May 10, 1989. The magistrate recommended that the district court reinstate its prior decision. On May 20, 1991, the trial court adopted the recommendation of the magistrate, reinstated its prior decision, and gave the State of Tennessee ninety (90) days to either reindict the appellant or release him. However, this order was stayed pending the warden's appeal. The Sixth Circuit affirmed the judgment of the district court on April 1, 1992.[12] The Court directed the State of Tennessee to reindict Jefferson within ninety (90) days or release him from custody.[13] The United States Supreme Court denied the warden's petition for a writ of certiorari on October 5, 1992.[14]

On July 24, 1992, the Davidson County Grand Jury returned a six-count indictment against the appellant. The first count charged the appellant with felony murder, the felony being the rape of Barbara Bolte. The second count of the indictment charged the appellant with felony murder, the felony being robbery. The third count of the indictment charged the appellant with felony murder, the felony being burglary. The fourth count of the indictment charged the appellant with felony murder, the felony being larceny. The fifth count of the indictment charged the appellant with premeditated murder. The sixth count of the indictment charged that the appellant raped Barbara Bolte.

The appellant moved to dismiss Count VI of the indictment, the rape count, because the state had failed to provide the appellant with a speedy trial. A hearing was conducted on the motion on March 26, 1993. On April 2, 1993, the trial court entered an order finding that the appellant had in fact been denied a speedy trial in violation of the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution and dismissed Count VI.

The present trial commenced on August 9, 1993. The jury returned a verdict finding the appellant guilty of premeditated murder and sentencing him to serve forty (40) years

in the Department of Correction. The state moved the trial court to correct the sentence on the ground that the "only possible punishment for the offense of First Degree Murder as to this defendant is Life Imprisonment." On August 23, 1993, the trial court entered an order modifying the sentence and imposing a sentence of confinement for life in the Department of Correction. The trial court denied the motion for a new trial on October 22, 1993.

## SUFFICIENCY OF THE EVIDENCE

During the early morning hours of June 15, 1968, the victim, John Robert Bolte, was asleep in his bedroom. His wife, Barbara, was asleep in the living room. Their child was asleep in another bedroom.

The appellant entered the Bolte residence through the basement. He went to a small room in the basement and armed himself with an axe. He obtained two knives, which were made by the victim, from a workbench in the basement. He also obtained a pair of rubber gloves that Mrs. Bolte used when washing clothes. The appellant removed his shoes before ascending the stairway leading to the living area of the residence.

The appellant entered the bedroom where the victim was sleeping and struck him with the axe at the base of his skull. The blow severed the victim's spinal cord as well as the carotid artery, which delivers the main blood supply to the brain. The cause of death was exsanguination—the victim bled to death. The medical examiner, who went to the scene of the murder later than morning, estimated that the victim died at 2:00 a.m. on the morning of June 15, 1968.

Mrs. Bolte testified that she was awakened by someone shaking her. When she awoke, she discovered that the appellant was the person shaking her. She began kicking, screaming, and yelling for her husband. She also remembered a knife blade protruding from her arm. She pulled the blade from her arm and lost consciousness. She went in and out of consciousness throughout the

12. *Jefferson v. Morgan,* 962 F.2d 1185 (6th Cir. 1992).

13. *Jefferson,* 962 F.2d at 1192.

14. *Morgan v. Jefferson,* 506 U.S. 905, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992).

whole ordeal. However, she remembered the appellant telling her: "Okay, I'll take you to that dead son-of-a bitch." The appellant took her into the bedroom and raped her on the bedroom floor as her husband lay dead on the bed. She also remembered the appellant putting on his pants, walking over her, going to the bed, taking a watch from her husband's arm, and walking over her as he left the bedroom. The axe was lying on the side of the bed. Later, when Mrs. Bolte tried to get up, the appellant hit her on the head with the axe knocking her unconscious.

When Mrs. Bolte regained consciousness, she saw the appellant going through the dresser drawers in the bedroom. The appellant turned off the lights and left the room. Later, he returned to the bedroom and rummaged through the closet. When Mrs. Bolte regained consciousness, she was lying in the bed with her husband.

The appellant stabbed Mrs. Bolte in the left arm, fractured her left arm, and bruised both of her eyes. She also had a laceration to her forehead, a laceration to the right shoulder, a stab wound to the left side of her neck, and a laceration to her abdomen. She was confined to a hospital for several days.

Mrs. Bolte made a positive identification of the appellant in a lineup. She also made a courtroom identification of the appellant. When the appellant was arrested, he had two liberty dimes, eleven buffalo nickels, and a couple of fountain pens. A jar of Indian-head pennies, buffalo nickels, and liberty dimes was taken from the Bolte residence. The victim's watch was traced to the appellant. A jeweler had etched the name of Bolte on several parts of the watch, and the jeweler identified the watch. When the police recovered the watch, the appellant had etched the letters J–E–F–F–E inside the watch. The appellant tried to sell the watch to a co-employee, but he did not purchase it. However, another employee purchased the watch from the appellant. Also, a police officer was able to obtain a palm print from the inside of a rubber glove used by the perpetrator. A technique involving a special dye was used to obtain the print. The palm print matched the known palm print of the appellant.

The appellant had a hearing deficit. He wore a hearing aid in one of his ears. Mrs. Bolte saw the hearing aid and described it to the police. However, he was not wearing the hearing aid when he appeared in the lineup.

The appellant contends that the evidence is insufficient, as a matter of law, to support a finding by a rational trier of fact that he was guilty of premeditated murder beyond a reasonable doubt. He argues that the state failed to prove the killing of the victim was committed "(1) with a cool purpose, (2) without passion or provocation, and (3) with a previously formed design or intent to kill." He suggests that this Court should reduce the conviction from murder in the first degree to murder in the second degree.

■ When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." [15] This standard of review is applicable to findings based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. [16]

■ In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence. [17] Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. [18] To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable

---

**15.** Tenn.R.App.P. 13(e).

**16.** *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim.App.), *per. app. denied* (Tenn.1990).

**17.** *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim.App.), *per. app. denied* (Tenn.1990).

**18.** *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, *cert. denied*, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956).

and legitimate inferences which may be drawn from the evidence.[19]

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court.[20] In *State v. Grace*,[21] our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact.[22] This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and all reasonable inferences that may be drawn from the evidence are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt.[23]

█ In this case, there is sufficient evidence contained in the record to support a finding by a rational trier of fact that the appellant was guilty of premeditated murder beyond a reasonable doubt.[24] This Court finds without hesitation or reservation that the killing of the victim constituted premeditated murder. The Boltes did not know nor had they ever seen the appellant. There was at total void of passion or provocation. He walked into the residence and casually armed himself with several weapons. He calmly, and with cool purpose, removed his shoes, ascended the stairs, and killed the victim while he was asleep. He apparently thought that he had killed Mrs. Bolte as well. Obviously, the appellant did not want anyone to interfere with him as he searched the resi-

dence for items of value. He further did not want to leave anyone alive that could identify him. He took time to rape Mrs. Bolte on the bedroom floor while her husband was dying in the bed. There is sufficient direct and circumstantial evidence to establish a previously formed design and intent to murder the people who resided in that residence.

This issue is clearly without merit.

## SUPPRESSION OF LINEUP IDENTIFICATION

█ The appellant was placed in a lineup shortly after his arrest. Mrs. Bolte attended the lineup and made a positive identification of the appellant as the perpetrator of the crimes committed on the morning of June 15, 1968. Prior to the trial in this case, the appellant filed a motion to suppress the lineup identification made by Mrs. Bolte. The trial court summarily dismissed this motion on December 2, 1992. In ruling, the trial court said:

The issue related to the constitutionality of his lineup was fully and fairly litigated before the original trial judge and specifically affirmed by the Supreme Court. *See State v. Jefferson*, [529 S.W.2d 674 (Tenn. 1975)] at 690. This Court declines to allow the relitigation of this issue when it has already been specifically determined adverse to the defendant['] s contention. The Motion to Suppress Identification is denied.

The appellant contends that the trial court committed error of prejudicial dimensions by refusing to conduct an evidentiary hearing on the merits of the motion to suppress the lineup identification. He argues that before the law of the case may be invoked, it must appear that the issue in the previous trial was identical to the issue in the present trial, and that the previous court's decision was not clearly erroneous. The appellant reasons

19. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

20. *Cabbage*, 571 S.W.2d at 835.

21. 493 S.W.2d 474, 476 (Tenn.1973).

22. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

23. *Tuggle*, 639 S.W.2d at 914.

24. Tenn.R.App.P. 13(e); *see Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

that because the trial judge did not make a finding that the prior ruling was not clearly erroneous, this issue is not the law of the case. The state strongly disagrees with this argument. The state contends the issues are identical and the prior ruling of this Court was not clearly erroneous. The state parenthetically notes that the appellant was permitted to present evidence of the purported suggestiveness of the lineup during the course of the trial. Moreover, the jury heard the testimony of Mrs. Bolte and the testimony of the purported suggestiveness. The jury, as the trier of fact, could attribute whatever weight it deemed appropriate regarding the appellant's identification as the person who murdered John Robert Bolte.

The law of the case doctrine is predicated upon the need for judicial economy. As a general rule, a court will not reconsider an issue once it has been decided. However, the application of this doctrine is discretionary. It is not a restraint upon the powers of a court. Thus, a court may, in the exercise of its discretion, reconsider such an issue. If the facts and circumstances warrant, the court may resolve the issue differently than before.

In *Delk v. State*,[25] the Supreme Court reversed the judgment of the trial court and remanded the cause for a new trial due to prosecutorial misconduct. Delk was tried and convicted following remand. He appealed this conviction.[26] In the subsequent appeal Delk contended, as he did in the first appeal, that "the trial court erred in allowing into evidence the discarded papers from the victim's store that were found in Rose Clayborne's yard."[27] In resolving this issue, this Court said:

> This identical issue was found to be without merit by our state Supreme Court in *Delk v. State*.... That holding is thus the

law of the case and must be followed here unless clearly erroneous.

\* \* \* \* \* \*

The Supreme Court's decision on the relevance of the evidence was echoed by the Sixth Circuit Court of Appeals in *Delk v. Atkinson*, 665 F.2d 90, 100 (6th Cir. 1981). Since the prior holding on this issue cannot be said to be clearly erroneous, it must also be applied to the present case.[28]

In *David Carney v. State*,[29] a post-conviction action, this Court was required to decide the appeal of the petitioner's fourth suit. This Court noted that the same issues raised on appeal had been previously decided by another panel of the court. In ruling, the Court quoted the previous opinion in its entirety and said:

> The foregoing opinion is the law of the case.... In the absence of demonstrable error in the first decision, the doctrine of the law of the case governs successive appeals involving substantially the same issues and facts. See the teaching and citations in *State v. Phillips*, 324 S.W.2d 693 (Sup.Ct.Mo.1959).[30]

The motion filed by the appellant is generic in form. It alleges that: "The out-of-court identification procedure was so suggestive as to give rise to a very substantial likelihood of irreparable misidentification." This is the precise issue that was raised by the appellant when he appealed his conviction. Furthermore, the prior decision of this Court, which was adopted by the Supreme Court, is not "clearly erroneous" as he suggests. As the late Mark A. Walker stated in the first *State v. Jefferson*:[31]

> The defendant urges that Mrs. Bolte's testimony of identification was the result of an unduly suggestive lineup. He also says he should have had an attorney at the lineup.

---

25. 590 S.W.2d 435 (Tenn.1979).

26. *State v. Delk*, 692 S.W.2d 431 (Tenn.Crim. App.1985).

27. *Delk*, 692 S.W.2d at 437.

28. *Delk*, 692 S.W.2d at 438.

29. Davidson County No. 01–C–01–9012–CR–00336, 1991 WL 218287 (Tenn.Crim.App., Nashville, October 29, 1991), *per. app. denied* (Tenn. 1992).

30. *David Carney*, Slip op. at 4–5.

31. 529 S.W.2d 674 (Tenn.1975).

The defendant had no constitutional right to an attorney at the preindictment lineup.... The defendant signed a waiver of any right to an attorney and at no time requested one. Although the officers undertook to get an attorney from the public defender's staff to attend and waited some time for him to arrive, it was not necessary under these circumstances for him to be there.

The defendant was one of five black men in similar dress at the lineup. His hearing aid was removed and there was nothing to indicate that he had a hearing problem. All men repeated the same words spoken to Mrs. Bolte at the scene of the crime. Mrs. Bolte immediately recognized the defendant when she saw him in the lineup. It is clear that the lineup was conducted in a fair manner and that it was not improperly suggestive. This assignment is overruled.[32]

The records of the 1971 trial and the present trial are replete with evidence concerning the lineup, i.e., who was in the lineup, how they were dressed, the similarity of the participants in the lineup, what they were asked to say, how the lineup was run by the officers, what was said to Mrs. Bolte before and during the lineup, as well as additional evidence that related to the lineup. Based upon a reading of the two records, the facts have not changed. Also, the law has not changed. Judge Walker correctly decided the lineup issue based upon the law applicable to the issue. In other words, the prior decision of this issue was not "clearly erroneous." Thus, the trial court did not abuse its discretion in applying the law of the case doctrine to this issue.

This Court parenthetically notes that the allegations contained in the generic motion to suppress may not have warranted an evidentiary hearing. As this Court said in *State v. Burton:* [33]

A motion to suppress, like any other motion, is required to state the grounds upon which it is predicated with particularity.

Tenn.R.Crim.P. 47. Thus, before an accused is entitled to an evidentiary hearing, the motion "must be sufficiently definite, specific, detailed and non-conjectural, to enable the court to conclude a substantial claim ... [is] presented." *State v. Davidson,* 606 S.W.2d 293, 297 (Tenn.Crim.App. 1980). See *State v. Howell,* 672 S.W.2d 442, 444 (Tenn.Crim.App.1984). The motions filed by the defendants in the case *sub judice* do not comport with the standards enunciated in Rule 47 and our decision in *Davidson;* and the defendants were not entitled, as a matter of law, to an evidentiary hearing. See *State v. Howell,* supra.[34]

The motion in this case contains bare allegations of law. It does not contain any factual allegations. Thus, it would be impossible for a trial court to review the motion and determine if a substantial issue existed and an evidentiary hearing was warranted.

This Court understands and appreciates the time constraints and plight of appointed counsel, particularly public defenders who face enormous case loads, difficult clients, and must spend most days in court defending their clients. Nevertheless, this Court cannot overlook or bend the rules to accommodate these individuals. Of course, a trial court may conduct an evidentiary hearing incident to a motion to suppress notwithstanding the deficiency in the pleadings. This Court does not fault a trial court that exercises its discretion in this regard. However, every advocate should strive to comply with the rules governing practice in criminal actions.

This issue is without merit.

## RIGHT TO SPEEDY TRIAL

On July 23, 1968, the Davidson County Grand Jury returned four separate indictments against the appellant. One indictment charged the appellant with the killing of John Robert Bolte. A second indictment charged the appellant with raping Barbara Bolte. A third indictment charged the appellant with

---

**32.** 529 S.W.2d at 690.

**33.** 751 S.W.2d 440 (Tenn.Crim.App.), *per. app. denied* (Tenn.1988).

**34.** *Burton,* 751 S.W.2d at 445.

assaulting Barbara Bolte with the intent to commit murder in the first degree. A fourth indictment charged the appellant with assaulting Dara Bolte, the Boltes' young child, with intent to commit murder in the first degree. The two indictments for attempt to commit murder in the first degree are now moot. The state opted not to reindict the appellant for these two offenses.

The Honorable Thomas H. Shriver, presently serving as a judge of the Criminal Court for the Twentieth Judicial District, was the District Attorney General when the appellant was indicted. Judge Shriver personally tried the appellant in 1969 and 1971.

Judge Shriver testified that the trial judge in these two trials, Honorable Raymond H. Leathers, had a policy that multiple indictments arising out of the same criminal episode could not be consolidated for trial. The District Attorney General was required to select one of the indictments to prosecute. Judge Shriver elected to prosecute the appellant for the murder of John Robert Bolte. According to Judge Shriver, the defense wanted to try the murder case by itself.

The rape case was continued to a later date. On October 22, 1971, defense counsel filed a motion seeking the entry of an order requiring the state to give notice of its intent to prosecute the remaining cases. On November 12, 1971, the state moved to consolidate the three remaining cases for trial.[35] On March 13, 1972, the trial court ordered the state to give defense counsel notice of its intent to go to trial on the remaining indictments. On May 26, 1972, a motion to secure the attendance of out of state witnesses was continued by consent. On May 31, 1972, the following minute entry appears:

> Thereupon, counsel for the defendant appeared in open court and stated he was of the opinion that these cases now set for July 17, 1972, should be continued to an indefinite date, pending final disposition of

case [sic] which has been tried, and by agreement of the Attorney General and counsel for the defendant, these cases are continued, with all other rights reserved.

As previously stated, this Court affirmed the appellant's conviction and sentence.[36] However, the case was remanded to the trial court for a hearing on the appellant's plea in abatement.[37] After remand, this Court subsequently affirmed the judgment of the trial court that African–Americans were not systematically excluded from the grand jury that indicted him or the petit jury that convicted him.[38] The Supreme Court denied the appellant's petition for a writ of certiorari on October 11, 1977. In summary, the murder conviction became final on October 11, 1977, the date the Tennessee Supreme Court declined to review the matter.

There is no mention of the rape case in the minutes after May 31, 1972. The state made no effort to prosecute this case. The appellant did not move the trial court for the entry of an order granting him a speedy trial. However, when the Sixth Circuit ordered the state to reindict the appellant or grant him his freedom, the state reindicted the appellant for (a) the murder of John Robert Bolte and (b) the rape of Barbara Bolte.[39]

The appellant filed a pretrial motion to dismiss Count VI of the indictment, the rape count. The motion was predicated upon the failure of the State of Tennessee to give him a speedy trial, a violation of the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution. The trial court concluded that "the State did not proceed because it believed its ninety-nine (99) year sentence on the murder case was safe, and therefore, it lost interest in the rape case." The trial court granted the motion on the ground the state had indeed violated the appellant's right to a speedy trial and dismissed Count

---

**35.** This minute entry is inconsistent with the testimony of Judge Shriver that Judge Leathers would not permit multiple indictments to be consolidated for trial.

**36.** *See State v. Jefferson*, 529 S.W.2d 674 (Tenn. 1975).

**37.** *Jefferson*, 529 S.W.2d at 677.

**38.** *Jefferson v. State*, 559 S.W.2d 649 (Tenn.Crim. App.), *cert. denied* (Tenn.1977).

**39.** There is no explanation in the record why the state did not reindict the appellant for the two assaults with intent to commit murder.

VI. The trial court considered the delay from the date of the original indictment until the trial court ruled upon the motion, a period of twenty-five (25) years.

The trial court granted the State of Tennessee permission to pursue an interlocutory appeal pursuant to Rule 9, Tennessee Rules of Appellate Procedure. This Court denied the application and refused to entertain the appeal.[40] The State of Tennessee subsequently filed an extraordinary appeal pursuant to Rule 10, Tennessee Rules of Appellate Procedure, in the Supreme Court. The Supreme Court also refused to entertain the appeal.[41]

### A.

The United States Constitution guarantees the accused the right to a speedy trial.[42] The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." This right has been held applicable to the states through the Due Process Clause of the Fourteenth Amendment.[43]

The Tennessee Constitution also grants the accused the right to a speedy trial.[44] An identical right is provided by statute.[45] This statute provides in part that "[i]n all criminal prosecutions, the accused is entitled to a speedy trial...." In addition, Rule 48(b), Tenn.R.Crim.P., provides for the dismissal of an indictment, presentment, information, or criminal complaint "[i]f there is unnecessary delay in presenting the charge to a grand jury against a defendant who has been held to answer to the trial court, or if there is unnecessary delay in bringing a defendant to trial...."

Neither the constitutional provision nor the statutory provision of the rule delineates the period of time in which the accused must either be brought to trial or released.[46] Nor do these provisions define what is meant by the phrase "speedy trial." In *Arrowsmith v. State*, the Supreme Court defined the term "speedy trial" in the following manner:

A speedy trial ... means a trial as soon after indictment as the prosecution can, with reasonable diligence, prepare for it, without needless, vexatious, or oppressive delay, having in view, however, its regulation and conduct by fixed rules of law, any delay created by the operation of which rules does not in legal contemplation work prejudice to the constitutional right of the accused.[47]

### B.

"The right to a speedy trial is generally different from any of the other rights enshrined in the Constitution for the protection of the accused"[48] because both society and the accused have an interest in ensuring that the accused is afforded a speedy trial.[49] The societal interest is said to exist "separate from, and at times in opposition to, the interests of the accused."[50]

The societal interest in the protection of the Sixth Amendment right to a speedy trial was described by the United States Supreme Court in *Barker v. Wingo*:

The inability of courts to provide a prompt trial has contributed to a large backlog of

---

**40.** *State v. James Thomas Jefferson*, Davidson County No. 01–C–01–9304–CR–00137 (Tenn. Crim.App., Nashville, May 19, 1993).

**41.** *State v. James Thomas Jefferson*, Davidson County No. 01–S–01–9307–CR–00103 (Tenn.Sp. Ct., Nashville, August 30, 1993).

**42.** U.S. Const. amend. VI.

**43.** *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); *State v. Bishop*, 493 S.W.2d 81, 83 (Tenn.1973); *State v. Kolb*, 755 S.W.2d 472, 473 (Tenn.Crim.App.1988); *Beard v. State*, 485 S.W.2d 882, 886 (Tenn.Crim. App.), *cert. denied* (Tenn.1972).

**44.** Tenn.Const. art. I, § 9.

**45.** Tenn.Code Ann. § 40–14–101.

**46.** *See Arrowsmith v. State*, 131 Tenn. 480, 484, 175 S.W. 545, 546 (1915).

**47.** 131 Tenn. at 488, 175 S.W. at 547.

**48.** *Barker v. Wingo*, 407 U.S. 514, 519, 92 S.Ct. 2182, 2186, 33 L.Ed.2d 101, 110 (1972).

**49.** *Barker*, 407 U.S. at 519, 92 S.Ct. at 2186, 33 L.Ed.2d at 110.

**50.** *Barker*, 407 U.S. at 519, 92 S.Ct. at 2186, 33 L.Ed.2d at 111.

cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes.... Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation.[51]

The accused's interest in obtaining a speedy trial is threefold. First, a prompt trial prevents undue and oppressive incarceration prior to a trier of fact's determination of the accused's guilt. Second, a prompt trial also minimizes the anxiety and concern which accompanies a public accusation. Third, a prompt trial limits the possibility that long delays will impair the accused's ability to defend himself or herself.[52]

### C.

■ The Sixth Amendment right to a speedy trial attaches when a person has been formally "accused" of a criminal offense.[53] A person becomes an "accused" when (a) an arrest warrant is issued,[54] (b) the person has been arrested and held to answer a criminal charge,[55] or (c) the grand jury has returned an indictment or presentment charging the person with the commission of a crime.[56] This rule applies with equal force to claims made under color of the Tennessee Constitution.[57] In *Boswell v. State,*[58] this Court said:

[W]e hold to invoke an individual's right to a speedy trial under the provisions of Article I, Section 9, of the Constitution of this state, there must be either a formal indictment or presentment, or the actual restraints imposed by arrest and holding to answer a criminal charge.[59]

In this case, the appellant was an "accused" since he was indicted by the Davidson County Grand Jury on July 23, 1968. Thus, he is entitled to the protection of the speedy trial provisions contained in both the United States and Tennessee Constitutions.

### D.

When the accused seeks the dismissal of a prosecution based upon the denial of the constitutional right to a speedy trial, the accused must establish a period of delay that is "presumptively prejudicial."[60] This triggers the balancing test used to determine the merits of a speedy trial issue.[61] This "balancing test" is applied to claims made pursuant to the Sixth Amendment, Article I, § 9 of the Tennessee Constitution, and Tenn.Code Ann. § 40–14–101.[62]

■ There are four factors that must be balanced. The factors are (1) the length of

**51.** 407 U.S. at 519–20, 92 S.Ct. at 2186–87, 33 L.Ed.2d at 111 (footnotes omitted).

**52.** *Doggett v. United States,* 505 U.S. 647, 654, 112 S.Ct. 2686, 2692, 120 L.Ed.2d 520 (1992) (citations omitted).

**53.** *See United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468, 474 (1971); *State v. Baker,* 614 S.W.2d 352, 353–54 (Tenn.1981).

**54.** *State v. Mitchell,* 593 S.W.2d 280, 286 (Tenn.), *cert. denied,* 449 U.S. 845, 101 S.Ct. 128, 66 L.Ed.2d 53 (1980); *State v. Butler,* 795 S.W.2d 680, 686 (Tenn.Crim.App.), *per. app. denied* (Tenn.1990); *State v. Jones,* 733 S.W.2d 517, 522–23 (Tenn.Crim.App.), *per. app. denied* (Tenn. 1987); *State v. Mingledorff,* 713 S.W.2d 88, 89 (Tenn.Crim.App.1986).

**55.** *Boswell v. State,* 528 S.W.2d 825, 827 (Tenn. Crim.App.), *cert. denied* (Tenn.1975).

**56.** *Boswell,* 528 S.W.2d at 827.

**57.** *Baker,* 614 S.W.2d at 353 (Tenn.1981); *Boswell,* 528 S.W.2d at 827.

**58.** 528 S.W.2d 825 (Tenn.Crim.App.), *cert. denied* (Tenn.1975).

**59.** 528 S.W.2d at 827.

**60.** *Doggett,* 505 U.S. at 651, 112 S.Ct. at 2690, 120 L.Ed.2d at 528; *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

**61.** *Doggett,* 505 U.S. at 651, 112 S.Ct. at 2690, 120 L.Ed.2d at 528; *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

**62.** *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116–17; *see State v. Bishop,* 493 S.W.2d 81, 83–84 (Tenn.1973); *State v. Perkins,* 713 S.W.2d 689, 691 (Tenn.Crim.App.), *per. app. denied* (Tenn.1986).

the delay, (2) the reasons for the delay, (3) the accused's assertion of the right to speedy trial, and (4) the prejudice which enures to the accused.

### E.

█ The first determination this Court must make is when the delay began and when the delay ended. This Court finds that the delay began when the appellant was indicted on July 23, 1968.[63] It ended on the day that the trial court dismissed this count of the indictment, April 2, 1993. Thus, the period of delay is twenty-four (24) years, eight (8) months, and five (5) days. During this entire period of time the appellant was confined in the Department of Correction. The State of Tennessee could have required the appellant to be present and stand trial at any time the State of Tennessee elected. The length of this delay was sufficient to warrant review on the merits and apply the balancing test.

On July 17, 1972, counsel for the appellant and the District Attorney General agreed that the rape case and two attempts to commit murder in the first degree would be continued indefinitely until the appellate courts had ruled upon the merits of the appeal in the murder case. The initial state appellate process was concluded on November 10, 1975. The issue on remand was whether there had been a systematic exclusion of African–Americans from the grand jury that indicted the appellant and the petit jury that convicted him. Assuming *arguendo* that the State of Tennessee is entitled to have the period of delay shortened for this length of time, there still would be a delay of eighteen (18) years, four (4) months, and twenty-three (23) days.

Judge Shriver thought at one time he could not go to trial because the exhibits were lost. The search made was at best a simple genuflection in that direction. If he had made a thorough search, he would have found the exhibits in the property room located in the Supreme Court Building. This Court cannot give much weight to the contention that this period of delay should be afforded the state.

There appears to be no valid reason why all of the indictments were not consolidated and tried together in the first trial. The State of Tennessee offered proof that the trial court would not try multiple cases. The state was required to select one of the cases and try that case. However, the record refutes this proof. There is a minute entry which states that the State of Tennessee moved to consolidate the three remaining indictments. The trial court noted this discrepancy in its findings of fact. It appears that the trial court did not believe this proof to be credible. This Court agrees. Moreover, the testimony and the minute entry offset and cancel each other—meaning there is no evidence as to why the murder case was tried separately.

The more plausible explanation has to do with the punishment. When this case was tried, the State of Tennessee could have elected to seek a death sentence for murder in the first degree. The state logically thought that a jury would render a verdict of death. If the jury rendered a death sentence, any other sentences imposed in the remaining cases would be meaningless. In other words, the state did not intend to prosecute the three remaining indictments. Thus, the state tried the murder case. When the jury returned a sentence of ninety-nine years, the state must have been satisfied with the sentence because no effort was made to prosecute the remaining cases. In summary, there really is no valid reason for the delay.

The record establishes that the appellant did not assert his right to a speedy trial until December 1, 1992, the date the motion to dismiss Count VI was filed. However, this factor standing alone, does not preclude the dismissal of a prosecution when delay is quite lengthy.[64] In *Barker v. Wingo,* the United States Supreme Court said:

---

**63.** *See Smith v. State,* 168 Tenn. 265, 77 S.W.2d 450 (1935); *Arrowsmith v. State,* 131 Tenn. 480, 175 S.W. 545 (1915); *State v. Wallace,* 648

S.W.2d 264 (Tenn.Crim.App.1980), *per. app. denied* (Tenn.1981).

**64.** *Barker,* 407 U.S. at 527–31, 92 S.Ct. at 2190–92, 33 L.Ed.2d at 115–17.

We reject ... the rule that a defendant who fails to demand a speedy trial forever waives his right.... We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application.[65]

Although an accused "has no duty to bring himself to trial," [66] the assertion or lack of assertion of the right to a speedy trial is to be balanced with the remaining three factors.

The appellant contends that he was not required to establish demonstrable prejudice because the prejudice is presumed due to the length of the delay. In *Doggett v. United States,* the United States Supreme Court said: "[C]onsideration of prejudice is not limited to the specifically demonstrable, and ... affirmative proof of particularized prejudice is not essential to every speedy trial claim." [67] In *Doggett,* the accused failed to establish that he was prejudiced by reason of the delay, which was approximately six and one-half years. Nevertheless, the Supreme Court granted the accused relief. In ruling, the Court said when the delay is "six times as long as that generally sufficient to trigger judicial review ..., and when the presumption of prejudice, albeit unspecified, is neither extenuated, ... nor persuasively rebutted, the defendant is entitled to relief." [68]

In this case, there were witnesses who had died, others who had moved away from the area, and one who could not testify because she was suffering from Alzheimer's disease and progressive dementia. If this trial had been timely, the testimony of the witnesses would have been memorialized by the court reporter. In the event the appellant was convicted, the court reporter would have transcribed her notes and had a transcript prepared, approved, and filed in this Court. If it became necessary to retry this case with the murder case, the appellant would have the benefit of the transcript. As in the murder case, the testimony of the witnesses who had died or could not be found could be read to the jury.[69] In summary, the appellant lost this valuable right when the state opted not to try him in the rape case.

### F.

This Court is of the opinion the trial court did not abuse its discretion in finding that the appellant's right to a speedy trial had been violated. It must be remembered that the state is the party charged with seeing that the appellant receives a speedy trial.[70] Moreover, the decision of the trial court is consistent with the decisions of our Supreme Court and this Court.

In *Arrowsmith v. State,*[71] eleven separate indictments were returned against the accused. He was tried for one count of forgery, convicted, and sentenced to confinement for three years in the Department of Correction. No effort was made to prosecute the appellant on the remaining ten indictments while he was confined. When he had served his sentence, the appellant was returned to face the remaining ten indictments. He was convicted of another count of forgery and sentenced accordingly. Approximately three years expired between the trials. The Supreme Court held that the accused's right to a speedy trial had been violated.

---

**65.** 407 U.S. at 528, 92 S.Ct. at 2191, 33 L.Ed.2d at 115–16.

**66.** 407 U.S. at 527, 92 S.Ct. at 2190, 33 L.Ed.2d at 115.

**67.** 505 U.S. at 655, 112 S.Ct. at 2692, 120 L.Ed.2d at 530 (citations omitted).

**68.** 505 U.S. at 658, 112 S.Ct. at 2694, 120 L.Ed.2d at 532 (citations and footnotes omitted).

**69.** *See* Tenn.R.Evid. 804(a) and (b). The testimony of a witness at a former trial may be read into the record at a subsequent trial of the same case when the witness has died, is unable to attend due to a physical or mental illness, or the witness cannot be served with the process of the court. The state certainly would have had both the opportunity and the same or similar motive "to develop the testimony by direct, cross, or redirect examination."

**70.** *Barker,* 407 U.S. at 527, 92 S.Ct. at 2190, 33 L.Ed.2d at 115.

**71.** 131 Tenn. 480, 175 S.W. 545 (1915).

In *Smith v. State*,[72] a case factually similar to this case, the appellant was indicted for the commission of two homicides. He was tried on one case and convicted. He apparently spent twelve years in the Department of Correction following this conviction. The case does not state what occurred with the other indictment. However, the appellant was reindicted for this same offense approximately fourteen years later. He was tried and convicted of involuntary manslaughter based on the new indictment. The state, as in this case, argued that the time for determining the right to a speedy trial began to run after the return of the second indictment. The Supreme Court rejected this argument and held that the accused had been denied his right to a speedy trial. In ruling, the court said:

> To sustain this contention of the state would be to observe the form of the constitutional direction and deny its substance. The second indictment was a continuation of the prosecution begun by the first.... Both indictments charged the same offense. The constitutional right which had accrued as a bar to the further prosecution of the first indictment would be defeated by evasion, if the state could avoid the consequences of its delay by the simple expedient of abandoning the first and presenting a new indictment.... Here, the prosecution was begun when the first indictment was returned, and the statute of limitation was tolled by that indictment....
>
> The judgment of the trial court will be reversed, and the plaintiff in error discharged.[73]

In *State v. Wallace*,[74] the accused was indicted in Humphreys County in August of 1977. He was confined to the penitentiary for an unrelated conviction in Giles County. He wrote his attorney in the Humphreys County case approximately a month after arriving at the penitentiary. He asked for a trial in the Humphreys County case as soon as possible. There was no written request or formal detainer placed that barred the appellant's release from the penitentiary. The appellant was subsequently released on parole and permitted to return to his home in Chicago, Illinois. When he sought a special parolee's permit to visit his grandmother out-of-state, he was notified of the pending Humphreys County case. He waived extradition and returned to Tennessee in September of 1979. This Court held that the accused was denied the right to a speedy trial due to the twenty-six month delay between indictment and trial.

This issue is without merit.

## RELIABILITY OF CONVICTION

The appellant contends that his conviction is not reliable due to the passage of time, dispersion of witnesses, erosion of memories, and the loss of defense evidence. He argues that the state lost or destroyed defense trial exhibits; and the state failed to disclose exculpatory evidence. The state disagrees. The state argues that the appellant has failed to establish that the missing evidence was "exculpatory" in nature. Furthermore, the fact that the items were listed as defense exhibits does not equate to bad faith in losing or destroying the exhibits.

### A.

■ In this case, several oversized exhibits were maintained by the clerk of the trial court. These exhibits included a blue rug, footprints on the flooring taken from the victim's residence, high top shoes, house shoes, a box of checks, and a chart setting forth points of reference to Mrs. Bolte's cross-examination. All of these exhibits were introduced by the appellant at his 1971 trial.

Customarily, large or oversized exhibits are not transmitted to the appellate court. These exhibits are retained by the clerk of the trial court. If the appellate court wishes to examine one or all of these exhibits, it may do so by ordering the clerk to transmit the exhibits to the clerk of the appellate court.

---

72. 168 Tenn. 265, 77 S.W.2d 450 (1934).

73. *Smith*, 168 Tenn. at 266–67, 77 S.W.2d at 450.

74. 648 S.W.2d 264 (Tenn.Crim.App.1980), *per. app. denied* (Tenn.1981).

It appears that a new clerk of court was elected between 1971 and 1992. The clerk decided to purge several exhibits being maintained by the clerk's office. The only explanation for the loss of the exhibits is that the exhibits were part of the evidence being purged, and the exhibits were either discarded or destroyed. There is nothing in the record to indicate that the clerk conferred with the district attorney general's office before purging these exhibits or any other exhibits that were either discarded or destroyed. To the contrary, when the district attorney general went in search of the exhibits, he was puzzled as to why he could not find them. Because the state did not have the lost items in its possession or cause the loss of the items, in good or bad faith, there is no due process violation under *Arizona v. Youngblood*.[75]

Furthermore, this Court has examined the transcript of the 1971 trial, which consists of six full boxes, to determine the relevance and importance of each missing exhibit. This Court has also examined the brief filed by the appellant in the 1971 case. The brief consists of 280 pages. Based upon this thorough study, these exhibits were marginally relevant, and of little, if any, exculpatory value to the appellant. These exhibits are not mentioned with prominence in the forceful argument of innocence contained in the appellant's brief in the 1971 case.

The blue rug[76] was introduced during defense counsel's cross-examination of Mrs. Bolte. She testified that the rug was at the end of the bed in their bedroom.

The piece of wood[77] was actually a section of flooring that was removed from the Boltes' residence by police officers. The section of flooring had a bloody footprint on it. This too was introduced by defense counsel during Mrs. Bolte's cross-examination. This exhibit was examined by a Tennessee Bureau of Investigation agent, Harold T. Wilatch. Agent Wilatch testified that the footprint on the section of flooring and the known footprint of the appellant were the same "overall" size, but he could not make a positive identification because the person making the footprint on the section of flooring was wearing a sock. Thus, the ridges were not shown. The appellant did have available to him a photograph that had been taken of the footprint before the section of the flooring was removed.

The pair of shoes[78] the appellant was wearing when he was arrested was introduced during the cross-examination of Officer George Curry of the Metropolitan Police Department. Apparently, defense counsel wanted to establish that the appellant was wearing the shoes during the ensuing lineup. Officer Curry stated that he did not know whether the appellant did or did not wear the shoes during the lineup.

A pair of slippers[79] removed from the Boltes' residence was introduced during the cross-examination of Lieutenant Hill of the Metropolitan Police Department. Lieutenant Hill testified that the slippers had been removed from the Bolte residence, but he did not know where they were located inside the residence when removed by the police.

A box of checks[80] was introduced during the cross-examination of Agent Wilatch. These checks were examined for fingerprints. Agent Wilatch testified that the appellant's fingerprints were not found on any of the checks.

The appellant has failed to make a compelling case that the absence of these exhibits impaired defense counsel's ability to prepare for trial or present a defense during the 1993 trial. He simply argues that the defense has been deprived of having these exhibits analyzed with modern technology. The appellant has failed to illustrate how or what modern technology would have assisted in establishing his innocence. In summary, the conjecture and surmise set forth in the appellant's brief is nothing more than wishful

75. 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

76. Exhibit 34, vol. 45, p. 337.

77. Exhibit 37, vol. 45, p. 340.

78. Exhibit 56, vol. 48, p. 761.

79. Exhibit 71, vol. 51, p. 1223.

80. Exhibit 81, vol. 55, p. 1776.

thinking. This Court cannot engage in such speculation, particularly in view of the failure to demonstrate how these items would have helped the defense.

This sub-issue is overruled.

## B.

The appellant contends that the state withheld exculpatory information. The appellant points to the police report of Officer Frank E. Wade and to some audio tape recordings. Officer Wade's report contained a neighbor's description of an African–American who was seen in the neighborhood about the time the burglary-murder-rape occurred. The report also revealed that another neighbor had told Officer Wade that John Robert Bolte told her that he had tape recorded telephone conversations between Mrs. Bolte and her paramour, Richard Hartman. When Mrs. Bolte and Hartman severed their relationship, Hartman kept calling. The victim had the telephone number changed. The police removed numerous audio tapes from the Bolte residence during the ensuing investigation. No evidence was introduced as to what was recorded on the tapes that were removed from the house. Moreover, Mr. Bolte's brother testified that he recovered several audio tapes that belonged to the victim.

The appellant argues that he has made repeated requests for exculpatory information, but the state never furnished him with a copy of Officer Wade's report or the information contained in the report. The statement was furnished to the appellant after Officer Wade completed his direct testimony during the 1993 trial.[81]

The prosecutor only has a constitutional duty under *Brady v. Maryland* to disclose evidence to the defense when the information is material to the defense, i.e., when it creates a reasonable probability, sufficient to undermine confidence in the outcome, that its disclosure would change the result of the proceeding.[82]

In the recent case of *Kyles v. Whitley*,[83] the United States Supreme Court explained more fully its use of the term "reasonable probability" in the *Bagley* standard:

> *Bagley's* touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial."[84]

### (1)

Officer Wade's report stated that "Ms. Catherine Stewart ... stopped me as I was leaving the murder house and said she was going home this morning and passed the murder house at about 3:40 a.m. And a MC [male, colored] was walking down the road about the vicinity of the house on Edmundson Pike. The only description is [a] MC stocky, short, dark and had a lot of kinky hair." Ms. Stewart was not available to testify at the 1993 trial. During the interval between the 1971 trial and the 1993 trial, Ms. Stewart became afflicted with Alzheimer's disease and progressive dementia. Her physician stated the condition would render any testimony she may give invalid or unreliable. The parties entered into the following stipulation, which was read to the jury:

> On June 15, 1968, Mrs. Catherine Stewart who lived at 5045 Edmonson Pike, told Officer Frank Wade that as she was passing the Bolte home at 3:40 a.m. on Saturday, June 15, she observed a black male walking down the road. She described the male black as being short, stocky, and

**81.** *See* Tenn.R.Crim.P. 26.2.

**82.** *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985).

**83.** 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

**84.** 514 U.S. at ——, 115 S.Ct. at 1566, 131 L.Ed.2d at 506 (quoting *United States v. Bagley*, 473 U.S. at 678, 105 S.Ct. at 3381, 87 L.Ed.2d at 491).

dark. She said the man had a lot of kinky hair. She had no further police contact.

Appellant's claim of a *Brady* violation must fail for two reasons. First, the state did not suppress this evidence. The report containing this information was furnished to defense counsel pursuant to Rule 26.2, Tenn.R.Crim. P., immediately after Wade's direct examination. This disclosure did not deny the defense its effective use at trial. Moreover, the appellant was able to relate this information to the jury by stipulation. This may have been the best way to present the information from the defense prospective. The state could not cross-examine the stipulation. Second, the evidence was not material in the context of this case. The mere presence of another African–American in the neighborhood or in close proximity of the Bolte residence that morning does not prove or disprove that the appellant was the perpetrator of this crime. Ms. Stewart did not see this man leaving the Bolte residence—he was simply walking down the street.

It must be remembered that the direct and circumstantial evidence points unerringly to the appellant as the perpetrator of the murder. Mrs. Bolte made a lineup identification of the appellant. This identification was positive—she did not hesitate in making the identification. She made a courtroom identification of the appellant in both the 1971 and 1993 trials. The victim's wrist watch was traced to the appellant. He possessed coins that were part of the coin collection taken from the residence. His own witness stated that it was difficult to find buffalo nickels with readable dates. The eleven buffalo nickels he possessed when he was arrested had legible dates. He also had two dimes that were rare and were the type of coins that would be found in possession of a coin collector.

In summary, the state did not suppress the evidence, and this evidence was not material. This Court is of the opinion that it is not reasonably probable that if this evidence was revealed earlier, the results of the trial would have been any different.[85]

85. *Kyles,* 514 U.S. at ——, 115 S.Ct. at 1565–66, 131 L.Ed.2d at 506; *Bagley,* 473 U.S. at 682–83,

## (2)

■ Officer Wade's report reflected that the police "found a great deal of tapes and they were brought to headquarters for further investigation." However, Officer Wade testified that he never saw the tapes or listened to them. Neither the state nor the defense produced a witness who knew what was actually on the tapes. The witness who told police that the victim, John Robert Bolte, had told her that he recorded the telephone conversations between Mrs. Bolte and Hartman, was not available to testify. She was out of town during the trial. What Bolte told this witness was hearsay. Unless the appellant can fit this hearsay into one of the exceptions to the hearsay rule, it would not be admissible.

The appellant's complaint is that "[w]ithholding these tapes deprived the defense from investigating the animus existing between Richard Hartman and the Bolte's in the days immediately preceeding the murder." However, defense counsel was permitted to cross-examine Mrs. Bolte about her affair with Hartman. She testified about every graphic detail involved in this affair. It included buying him an automobile, living with him in a trailer with two other couples, and Hartman being in the Bolte residence while the victim was at work. Hartman's testimony was also received into evidence. He too was grilled about every minute incident that occurred during the affair. In short, the jury heard every thing that there was to know about this affair.

This claim of the appellant must fail for two reasons. First, there is nothing in the record to establish that the content of audio tapes contained information that would have been favorable to the appellant. It is unknown what was on these particular tapes. Second, assuming *arguendo* that the tapes did contain these telephone conversations, the content of the tapes would not have been material in the context of this case.

105 S.Ct. at 3383–84, 87 L.Ed.2d at 491.

Any defense attorney worth his salt would be interested in listening to the tapes for the purpose of determining what, if anything, was contained on the tapes. However, the appellant's position regarding the tapes is predicated upon conjecture and surmise— what *might* have been on the tapes as opposed to what actually was on the tapes. This Court cannot engage in such conjecture and surmise and find a violation of the accused's right to exculpatory evidence. In short, the appellant has not established the necessary prerequisites that warrant relief from his conviction.

This issue is without merit.

## C.

■ The appellant's general argument that due process was violated due to the passage of time, dispersion of witnesses, erosion of memories, and the loss of defense evidence is similarly without merit. Had the appellant faced his first trial for the 1968 murder in August of 1993, the argument might have more weight. However, because he had prior trials and hearings in which to develop evidence which could be used again in the 1993 trial, due process was not violated. The evidence admitted at the 1971 trial could be introduced in the 1993 trial. It should be noted that there is no statute of limitations for prosecuting a charge of first degree murder. The state was at a decided disadvantage because it was required to establish the appellant's guilt beyond a reasonable doubt. The appellant has made no showing of prejudice, other than mere conclusions as to possibilities due to the passage of time.

This issue has no merit.

## EXHIBITION OF SCARS

■ The appellant contends that the trial court committed error of prejudicial dimensions by permitting Mrs. Bolte to exhibit the scars she sustained at the hands of the appellant. He argues that the residual scars were not relevant and that any probative value was substantially outweighed by the danger of unfair prejudice.

As the state notes, the appellant was charged with felony murder in the first count of the indictment. The felony was the rape of Mrs. Bolte. Thus, the state was required to prove that (1) the appellant murdered Mr. Bolte and (2) the felony, i.e., rape. The residual scarring was highly relevant for establishing that the appellant raped Mrs. Bolte. She testified that he stabbed her with a knife, apparently beat her, and struck her with the axe. The state was entitled to show the evidence of the injuries, the residual scars.

This evidence was clearly relevant to establish that the rape was committed with force and against Mrs. Bolte's will. These were essential elements of the crime of rape. The extent of her injuries was also relevant to Mrs. Bolte's credibility because it provides a motive to correctly identify the perpetrator of the crime. If Hartman had committed the crime, as suggested by the defense, Mrs. Bolte's motive for protecting the man who actually inflicted the severe wounds by accusing a man of a different race would be severely diminished.

■ Also, the trial court's ruling under Tenn.R.Evid. 403 that the probative value did not substantially outweigh the danger of unfair prejudice was not an abuse of discretion. The record does not indicate how these scars appeared at the time of the objection. Therefore, this Court cannot determine the extent of the danger of unfair prejudice that the trial court weighed in ruling on the motion. *State v. Hill,* 885 S.W.2d 357, 361 (Tenn.Crim.App.), *per. app. denied* (Tenn. 1994). In short, there is no evidence in the record which indicates any danger of unfair prejudice. In fact, any unfair prejudice would be minimal in light of the fact that no objection was made to the detailed testimony by Mrs. Bolte as to the injuries she suffered at the hands of the appellant.

The issue is without merit.

## SENTENCING

■ The appellant was tried for three counts of felony murder and one count of premeditated murder. Each count charged the appellant with killing John Robert Bolte

on the 15th day of June, 1968. The trial court charged the jury on the elements of each offense. The jury was also instructed:

If you find that the State has proven the defendant guilty by proof beyond a reasonable doubt of one of the counts charging first degree murder, you shall mark the verdict form as to the count on which all twelve of you agree, and report your verdict as follows, quote:

We, the jury, find the defendant guilty of murder in the first degree and set his sentence at, blank, with you, the jury, filing in the blank by setting his sentence at life or a specific term of years of from twenty years to life.

The jury returned its verdict on August 19, 1993. The verdict form indicated the jury's verdict in the following manner: "Count 5: We the Jury, find the defendant, James Thomas Jefferson, guilty of premeditated first degree murder and impose a sentence of 40 years."

Both the state and the appellant filed post-trial motions that addressed the verdict. The state's motion alleged that the punishment imposed by the jury, forty (40) years, "is a void and illegal sentence in that the only possible punishment for the offense of First Degree Murder as to this defendant is Life Imprisonment." The appellant's motion opposed the imposition of a life sentence. He asked the trial court to enter a judgment in conformity with the jury's verdict, i.e., forty (40) years confinement in the Department of Correction.

The trial court agreed with the state that the only punishment was confinement for life in the Department of Correction. The trial court directed the state to submit an appropriate judgment form reflecting that the punishment imposed was confinement for life in the Department of Correction. Thereafter, the trial court entered a judgment sentencing the appellant to life.

In this Court, the appellant contends that the punishment of life imprisonment for mur-

der in the first degree was unconstitutional, the trial court should have reduced the grade of the offense to murder in the second degree, and permitted the sentence of forty (40) years to remain in effect. In the alternative, the appellant contends that if the punishment was below the minimum punishment for murder in the first degree, this Court should reverse the judgment of the trial court and remand for a new trial. He also contends that the imposition of a life sentence violates the constitutional prohibition against *ex post facto* laws.

The state takes issue with the arguments advanced by the appellant. It contends that the trial court properly entered a life sentence.

### A.

In a series of opinions, the Supreme Court declared that all statutes proscribing death as a possible punishment were unconstitutional. In *State v. Hailey*,[86] the court held that Chapter 192 Public Acts of 1973 was unconstitutional because it violated Article II, § 17 of the Tennessee Constitution. The Act passed by the General Assembly embraced more than one subject, but the caption of the Act did not contain all of the subjects contained in the Act. In *Collins v. State*,[87] the court held that Chapter 462, § 3 of the Public Acts of 1974 was unconstitutional because it provided for a mandatory death sentence. The court remanded the case for resentencing only. It stated that the proper punishment range was twenty (20) years to life. In *Miller v. State*,[88] where the accused was sentenced to death pursuant to the statute held unconstitutional in *Collins*, our Supreme Court held that the last statute imposing a constitutionally valid punishment for first degree murder was Public Acts of 1915, ch. 181.[89] This statute abolished the death sentence and provided that the punishment for murder in the first degree was confinement for life in the penitentiary. *Miller* is

**86.** 505 S.W.2d 712 (Tenn.1974).

**87.** 550 S.W.2d 643 (Tenn.), *cert. denied*, 434 U.S. 905, 98 S.Ct. 303, 54 L.Ed.2d 192 (1977).

**88.** 584 S.W.2d 758 (Tenn.1979).

**89.** *Miller*, 584 S.W.2d at 762, *opinion on petition to rehear*, 584 S.W.2d at 765.

the last time that this subject was considered by the Supreme Court.

The appellant argues that *Miller* is wrong in holding that the last valid punishment for first degree murder was life imprisonment pursuant to Public Acts of 1915, ch. 181. The appellant takes issue with this analysis because there was a three day period in January of 1919 in which no punishment for first degree murder existed. This three day period occurred between the time when Chapter 181 of the Public Acts of 1915 was repealed, January 27, 1919,[90] and the next punishment statute was passed, January 30, 1919.[91] Since the punishment for first degree murder in Chapter 181 was repealed by legislative act, appellant argues that its reenactment can only be accomplished by legislative act rather than by a court's ruling.[92] Therefore, in searching for a former valid act under the analysis of *Miller*, there is no valid punishment statute to be left in full force and effect since Chapter 181 was repealed by a Public Act rather than merely superseded. This analysis as argued by the appellant was not addressed by the Tennessee Supreme Court in *Miller*.

The Tennessee Supreme Court has held that Chapter 181 of the Public Acts of 1915 is validly applied in the place of later, unconstitutional punishment statutes. The Court of Criminal Appeals, as an intermediate court, must follow the decisions of the Supreme Court. This Court may not alter, modify, revise, modernize, or overrule a decision of the Supreme Court.[93] As the Supreme Court said in the case of *Barger v. Brock*:

> [T]he Supreme Court is a direct creature of the Constitution and constitutes the supreme judicial tribunal of the state and is a court of last resort. All other courts are constitutionally inferior tribunals subject to the actions of the Supreme Court. Its adjudications are final and conclusive upon all questions determined by it, subject only to review, in appropriate cases by the Supreme Court of the United States.[94]

The crimes in this case occurred on June 15, 1968, long before the enactment of the Tennessee Criminal Sentencing Reform Act of 1982. The 1993 trial occurred after the enactment of the Tennessee Criminal Sentencing Reform Act of 1989. However, neither the 1982 nor the 1989 act was applicable to this case.[95] The jury, as the trier of fact, was required to determine the appellant's guilt, the grade of the offense, if guilty, and the length of the sentence he should serve.

In summary, this Court is bound by the Supreme Court's decision in *Miller* that the only possible punishment for first degree murder is life imprisonment. The trial court, an inferior court like this Court, was required to follow *Miller* as well. Thus, the trial court gave the jury an erroneous instruction regarding the punishment for first degree murder. The question this Court must now resolve is whether the trial court had the right to amend the clearly erroneous verdict of the jury by striking the punishment fixed by the jury, forty years, and sentencing the appellant to life in the Department of Correction.

## B.

When a jury, as the trier of fact, returns an incomplete or inaccurate verdict

**90.** Chapter 4 of the Public Acts of 1919 repealed Chapter 181 of the Public Acts of 1915. Apparently, Chapter 181 was repealed twice; once in Chapter 14 of the Public Acts of 1917 and Chapter 4 of the Public Acts of 1919. *State v. Bomar*, 212 Tenn. 149, 368 S.W.2d 748 (1963), *cert. denied*, 376 U.S. 915, 84 S.Ct. 670, 11 L.Ed.2d 612 (1964).

**91.** Chapter 5 of the Public Acts of 1919 provides for a punishment for first degree murder of death or twenty years to life if mitigating factors are found by the jury.

**92.** *See Haynes v. McKenzie Memorial Hosp.*, 667 S.W.2d 497, 498–99 (Tenn.Ct.App.1984).

**93.** *Barger v. Brock*, 535 S.W.2d 337, 340–41 (Tenn.1976); *Bloodworth v. Stuart*, 221 Tenn. 567, 572, 428 S.W.2d 786, 789 (1968); *see Richardson v. Johnson*, 60 Tenn.App. 129, 134, 444 S.W.2d 708, 711, *cert. denied* (Tenn.1969).

**94.** *Barger*, 535 S.W.2d at 340–41 (citation omitted).

**95.** Tenn.Code Ann. § 40–35–117(c) (1990) states: "For all persons who committed crimes prior to July 1, 1982, prior law shall apply and remain in full force and effect in every respect, including, but not limited to, sentencing, parole and probation."

that does not conform to the applicable law, the verdict is illegal, a nullity, and, therefore, void.[96] As a result, a trial court cannot accept the verdict because a judgment cannot be pronounced upon a void verdict.[97] If the verdict is to be corrected, the trial court must take immediate action before the jury is discharged.[98] The trial court should advise the jury that the court cannot accept the verdict, direct the jury to either reread the charge given by the court or the court can give a supplemental charge, and have the jury retire to consider its verdict. As the Supreme Court said in *Jones v. State*, 569 S.W.2d 462 (Tenn.1978):

> The trial judge has both the power and the duty to require that the jury correct or amend an improper or incomplete verdict.... The trial judge has the right and duty to mold a judgment in accordance with the final verdict returned by the jury.... But this does not carry with it the right to substitute for the rendered verdict a judgment that is substantially different.[99]

Once the jury is discharged, its verdict cannot be amended or corrected by the trial court as to the grade of the offense or the sentence imposed.[100]

In *Strunk v. State*,[101] the jury convicted the accused of robbery with a deadly weapon. The jury sentenced the accused to confinement for five (5) years. The minimum sentence for this offense was ten (10) years. The Supreme Court said that this was an illegal verdict. The court held that the trial court properly required the jury to correct this illegal sentence. The jury returned with a valid sentence of ten years.

In *Alexander v. State*,[102] the jury convicted the accused of driving while under influence. The jury set the punishment at $25 and 30 days confinement, which the jury suspended. The trial court simply struck the word "suspended" from the verdict and pronounced judgment. The Supreme Court reversed the sentence only and left the guilty verdict intact. The court held that the sentencing verdict, as returned by the jury, was illegal and a nullity because the jury was not authorized by law to suspend a sentence. The court further held that the trial court did not have the authority to alter or amend the judgment of sentence—only the jury had that authority.

In *State v. Williams*,[103] the jury convicted the accused of murder in the second degree which had a statutory punishment range of imprisonment for life to ten or more years. The jury imposed a sentence that read "not less than ten years." The jury was ordered to reconsider its verdict. The jury returned with a verdict of "not less [sic] ten years but not more than fifteen." The sentence was required to be expressed in a definite number of years. The Supreme Court reversed and remanded "for a new trial limited to the single issue of punishment." The court said that the judgment was "facially void" because the jury failed to express the punishment in terms of a fixed period of years.[104]

**96.** *Strunk v. State*, 209 Tenn. 1, 6–9, 348 S.W.2d 339, 342–43 (1957); *Alexander v. State*, 189 Tenn. 340, 225 S.W.2d 254 (1949); *Jenkins v. State*, 509 S.W.2d 240, 247–48 (Tenn.Crim.App.1974); *Gwinn v. State*, 595 S.W.2d 832, 835 (Tenn.Crim. App.), *per. app. denied* (Tenn.1979); *Jones v. State*, 526 S.W.2d 130, 133–34 (Tenn.Crim.App.), *cert. denied* (Tenn.1975).

**97.** *Jenkins*, 509 S.W.2d at 247–48.

**98.** *See Strunk*, 209 Tenn. at 6–9, 348 S.W.2d at 342–43; *Riley v. State*, 189 Tenn. 697, 227 S.W.2d 32 (1950); *Alexander v. State*, 189 Tenn. 340, 225 S.W.2d 254; *State v. Underwood*, 669 S.W.2d 700, 705 (Tenn.Crim.App.), *per. app. denied* (Tenn.1984); *State v. Daniel*, 663 S.W.2d 809, 812 (Tenn.Crim.App.), *per. app. denied* (Tenn.1983); *Gwinn v. State*, 595 S.W.2d at 835; *Meade v. State*, 530 S.W.2d 784, 787 (Tenn.Crim. App.), *cert. denied* (Tenn.1975); *Jones v. State*,

526 S.W.2d 130, 133–34 (Tenn.Crim.App.), *cert. denied* (Tenn.1975); *Jenkins*, 509 S.W.2d at 247–48.

**99.** 569 S.W.2d at 464.

**100.** *Alexander v. State*, 189 Tenn. 340, 225 S.W.2d 254; *State v. Morris*, 788 S.W.2d 820, 825 (Tenn.Crim.App.), *per. app. denied* (Tenn. 1990).

**101.** 209 Tenn. 1, 348 S.W.2d 339 (1957).

**102.** 189 Tenn. 340, 225 S.W.2d 254 (1949).

**103.** 575 S.W.2d 948 (Tenn.1978), *cert. denied*, 442 U.S. 932, 99 S.Ct. 2866, 61 L.Ed.2d 302 (1979).

**104.** 575 S.W.2d at 949.

In *Jones v. State*,[105] the jury returned a verdict of twenty (20) years. The sentence had to exceed twenty years. The trial court refused to accept the verdict and required the jury to reconsider its verdict. The jury returned a sentence of twenty-one years. This Court held that the trial court properly required the jury to reconsider the length of the sentence. The first verdict was void because it set the punishment at less than the statutory minimum for the offense.

In *Jenkins v. State*,[106] the jury found the accused guilty of aiding and abetting the offense of murder in the second degree. The jury set the punishment at five (5) years. The minimum punishment for the offense was ten (10) years. The trial court required the jury to reconsider the sentence. The jury returned with a sentence of ten (10) years. This Court, stating the initial verdict returned by the jury was a nullity, held that the trial court properly required the jury to reconsider its verdict.

In this case, the verdict returned by the jury was void because the punishment set by the jury was below the minimum punishment for the offense of murder in the first degree.[107] The trial court did not have the authority to change the jury's verdict from forty (40) years to confinement for life in the Department of Correction. Since the jury found the appellant guilty of premeditated murder and the evidence contained in the record supports the verdict, the verdict of the jury finding the appellant guilty of premeditated murder is affirmed. However, this case must be remanded to the trial court for a new sentencing hearing.

SCOTT, P.J. and JOE D. DUNCAN, Special Judge, concur.

---

**105.** 526 S.W.2d 130 (Tenn.Crim.App.), *cert. denied* (Tenn.1975).

**106.** 509 S.W.2d 240 (Tenn.Crim.App.), *cert. denied* (Tenn.1974).

**107.** *See Daniels v. State*, 176 Tenn. 181, 184, 140 S.W.2d 148, 149 (1940) (a verdict where the jury set a fine at less than the minimum for the offense is "a void verdict. The court is without power to fix the minimum statutory fine...."); *Murphy v. State*, 47 Tenn. 516, 524 (1870) (a verdict setting the punishment for less than the statutory minimum is not authorized by law, "the verdict [is] a mere nullity, and the Court ha[s] no power to pronounce a judgment upon it."); *Jenkins v. State*, 509 S.W.2d at 247 ("[A] verdict fixing punishment below the statutory minimum for the offense of which the defendant is found guilty is a nullity.")