IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 17, 2004

## JAMES THOMAS JEFFERSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 92-C-1372    Walter Kurtz, Circuit Judge**

---

**No. M2003-01422-CCA-R3-PC - Filed Februry 16, 2005**

---

Appellant, James Thomas Jefferson, appeals the trial court's denial of his petition for post-conviction relief. On appeal, Appellant argues the trial court should have granted his petition for post-conviction relief because (1) his trial counsel was ineffective for failing to request a jury instruction as to lost or destroyed evidence, and (2) his trial counsel was ineffective for failing to challenge the chain of custody. Because we find these issues to be without merit, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Cynthia F. Burnes, Nashville, Tennessee, for the appellant, James Thomas Jefferson.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

This case has a very long history, as the underlying offense occurred in 1968. Appellant was first tried for first degree murder in 1969. The jury could not reach a unanimous verdict and the trial court declared a mistrial. A second trial was held in 1971, and Appellant was convicted of first degree murder and sentenced to serve ninety-nine years in confinement. After lengthy litigation in state and federal courts, the United States District Court for the Middle District of Tennessee granted *habeas corpus* relief because Appellant had established a prima facie case of systematic exclusion of African-Americans from the grand jury that indicted him. Appellant was reindicted, and was

again convicted of first degree murder after a 1993 trial. After additional litigation, Appellant was given a life sentence. This Court summarized the facts presented at the 1993 trial as follows:

During the early morning hours of June 15, 1968, the victim, John Robert Bolte, was asleep in his bedroom. His wife, Barbara, was asleep in the living room. Their child was asleep in another bedroom.

The appellant entered the Bolte residence through the basement. He went to a small room in the basement and armed himself with an axe. He obtained two knives, which were made by the victim, from a workbench in the basement. He also obtained a pair of rubber gloves that Mrs. Bolte used when washing clothes. The appellant removed his shoes before ascending the stairway leading to the living area of the residence.

The appellant entered the bedroom where the victim was sleeping and struck him with the axe at the base of his skull. The blow severed the victim's spinal cord as well as the carotid artery, which delivers the main blood supply to the brain. The cause of death was exsanguination -- the victim bled to death. The medical examiner, who went to the scene of the murder later that morning, estimated that the victim died at 2:00 a.m. on the morning of June 15, 1968.

Mrs. Bolte testified that she was awakened by someone shaking her. When she awoke, she discovered that the appellant was the person shaking her. She began kicking, screaming, and yelling for her husband. She also remembered a knife blade protruding from her arm. She pulled the blade from her arm and lost consciousness. She went in and out of consciousness throughout the whole ordeal. However, she remembered the appellant telling her: "Okay, I'll take you to that dead son-of-a bitch." The appellant took her into the bedroom and raped her on the bedroom floor as her husband lay dead on the bed. She also remembered the appellant putting on his pants, walking over her, going to the bed, taking a watch from her husband's arm, and walking over her as he left the bedroom. The axe was lying on the side of the bed. Later, when Mrs. Bolte tried to get up, the appellant hit her on the head with the axe knocking her unconscious.

When Mrs. Bolte regained consciousness, she saw the appellant going through the dresser drawers in the bedroom. The appellant turned off the lights and left the room. Later, he returned to the bedroom and rummaged through the closet. When Mrs. Bolte regained consciousness, she was lying in the bed with her husband.

The appellant stabbed Mrs. Bolte in the left arm, fractured her left arm, and bruised both of her eyes. She also had a laceration to her forehead, a laceration to the right shoulder, a stab wound to the left side of her neck, and a laceration to her abdomen. She was confined to a hospital for several days.

Mrs. Bolte made a positive identification of the appellant in a lineup. She also made a courtroom identification of the appellant. When the appellant was arrested, he had two liberty dimes, eleven buffalo nickels, and a couple of fountain pens. A jar of Indian-head pennies, buffalo nickels, and liberty dimes was taken from the Bolte residence. The victim's watch was traced to the appellant. A jeweler had etched the name of Bolte on several parts of the watch, and the jeweler identified the watch. When the police recovered the watch, the appellant had etched the letters J-E-F-F-E inside the watch. The appellant tried to sell the watch to a co-employee, but he did not purchase it. However, another employee purchased the watch from the appellant. Also, a police officer was able to obtain a palm print from the inside of a rubber glove used by the perpetrator. A technique involving a special dye was used to obtain the print. The palm print matched the known palm print of the appellant.

The appellant had a hearing deficit. He wore a hearing aid in one of his ears. Mrs. Bolte saw the hearing aid and described it to the police. However, he was not wearing the hearing aid when he appeared in the lineup.

*State v. Jefferson*, 938 S.W.2d 1, 5-6 (Tenn. Crim. App. 1996). Between the 1971 trial and the 1993 trial, several oversized defense exhibits were lost and were unavailable for the new trial. The exhibits included a blue rug, footprints on the flooring taken from the victim's residence, high top shoes, house shoes, a box of checks, and a chart setting forth points of reference to Mrs. Bolte's cross-examination. *See id*. at 15. Apparently, these exhibits were likely discarded or destroyed by a newly-elected clerk of the court when the clerk decided to purge several exhibits being maintained by the clerk's office. *Id.* at 16.

## II. Issues Presented For Review

Appellant filed a petition and amended petition for post-conviction relief alleging an error in the jury instructions as well as ineffective assistance of counsel at his 1993 trial. After a hearing, the trial court denied Appellant's petition. On appeal, Appellant asserts two issues: (1) his trial counsel was ineffective for failing to request a jury instruction as to lost or destroyed evidence, and (2) his trial counsel was ineffective for failing to challenge the chain of custody of the State's evidence.

## III. Analysis

The trial judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court's findings of fact are afforded the weight of a jury verdict, and this court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the trial judge. *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). The burden of

establishing that the evidence preponderates otherwise is on petitioner. *Henley*, 960 S.W.2d at 579. However, the trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

This court reviews a claim of ineffective assistance of counsel under the standards of *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975), and *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). Appellant has the burden to prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice to Appellant so as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996); *Butler v. State*, 789 S.W.2d 898, 899 (Tenn. 1990). The failure to prove either deficiency or prejudice justifies denial of relief; therefore, the court need not address the components in any particular order or even address both if one is insufficient. *Goad*, 938 S.W.2d at 370. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

The test in Tennessee to determine whether counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *State v. Honeycutt*, 54 S.W.3d 762, 769 (Tenn. 2001). Therefore, in order to prove a deficiency, a petitioner must show "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065).

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *Honeycutt*, 54 S.W.3d at 768. The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *Henley*, 960 S.W.2d at 579; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

Appellant first argues the trial court should have granted his petition for post-conviction relief because his trial counsel was ineffective for failing to request a jury instruction as to lost or destroyed evidence. Appellant argues his trial counsel should have requested a jury instruction similar to that set forth by our Supreme Court in *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999), relating to evidence lost or destroyed by the State, which would have instructed the jury that they may infer that the absent evidence would be favorable to the defendant. However, in the direct appeal of Appellant's case, this Court held that it was the clerk's office and not the State that lost the missing exhibits:

It appears that a new clerk of court was elected between 1971 and 1992. The clerk decided to purge several exhibits being maintained by the clerk's office. The only explanation for the loss of the exhibits is that the exhibits were part of the evidence being purged, and the exhibits were either discarded or destroyed. There is nothing in the record to indicate that the clerk conferred with the district attorney general's office before purging these exhibits or any other exhibits that were either discarded or destroyed. To the contrary, when the district attorney general went in search of the exhibits, he was puzzled as to why he could not find them. Because the state did not have the lost items in its possession or cause the loss of the items, in good or bad faith, there is no due process violation . . . .

*State v. Jefferson*, 938 S.W.2d 1, 16 (Tenn. Crim. App. 1996). Furthermore, this Court held that those exhibits were only marginally relevant, and of little, if any, exculpatory value to Appellant. *Id.* As such, we agree with the post-conviction court that Appellant would not have been entitled to such a jury instruction at his 1993 trial, even if his trial counsel had requested it. Accordingly, trial counsel was not deficient for his failure to request a jury instruction regarding the lost evidence, nor was Appellant prejudiced by counsel's failure to do so.

Next, Appellant argues that the lower court should have granted his petition for post-conviction relief because his counsel was ineffective for failing to challenge the chain of custody of the State's evidence during the 1993 trial. Appellant's complaint relates primarily to a pair of gloves that were introduced at each of his trials. Apparently, at Appellant's 1993 trial, the State introduced evidence of a palm print inside the gloves which matched Appellant's palm print. The print was lifted before the 1993 trial using newly-discovered testing methods, which were not available at the time of Appellant's earlier trials. Appellant testified at the post-conviction hearing that these gloves were handled by a number of people during the course of his first two trials, including the attorneys and police.

Appellant has failed to introduce evidence at the post-conviction hearing demonstrating that even if his attorney had challenged the chain of custody of this or any other exhibits introduced during his 1993 trial, such a challenge would have been successful. Furthermore, Appellant has not demonstrated that excluding this evidence would have had an effect on the outcome of his trial, in light of the remaining evidence which "overwhelmingly" supported his conviction. *See State v. Jefferson*, 31 S.W.3d 558, 562 (Tenn. 2000). Accordingly, Appellant has failed to establish either deficient performance or prejudice resulting from any alleged deficiency in his counsel's representation. *Strickland v. Washington*, 466 U.S. 668 (1984).

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE