IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 22, 2005

## STATE OF TENNESSEE v. MITCHELL PRESNELL

**Appeal from the Criminal Court for Cocke County
No. 6413   Rex Henry Ogle, Judge**

---

**No. E2004-00266-CCA-R3-CD - Filed August 17, 2005**

---

A Cocke County jury found the defendant, Mitchell Presnell, guilty of aggravated robbery. The trial court sentenced the defendant to twenty (20) years as a Range II multiple offender. In this appeal the defendant claims that: (1) the evidence was insufficient to support his conviction; (2) the trial court erred when it failed to instruct on the lesser-included offenses of assault and aggravated assault; (3) the trial court erred in applying enhancement factor (3), that the defendant was a leader in the offense; and (4) the defendant was denied his right to a speedy trial. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., filed separate concurring opinions.

Kristi M. Davis, Knoxville, Tennessee, for the appellant, Mitchell Presnell.

Paul G. Summers, Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; James B. Dunn, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

On March 22, 1995, Landon Holdway, the victim, was at the K & W Café in Newport where he was seen talking to Mitchell Presnell, the defendant and Darrell Presnell. The victim had about $2,400 in cash with him, mostly in one hundred ($100) bills. The victim also had the keys to his house and truck, as well as a pocket watch with a chain and a knife. At some point during the evening, Holdway was shoved out of the door of the café by Darrell Presnell, the defendant's

brother. Tom Shelton, who saw the victim being pushed out of the door, tried to stop the Presnell brothers, but was threatened by the defendant at gunpoint. The defendant told Mr. Shelton that he "did not need to see this" and he "needed to go inside" the K & W. Rhonda Carr saw the defendant with Jimmy Don Jones and Darrell Presnell kicking and hitting the victim outside of the K & W. She specifically saw the defendant kick the victim "up side of the head" and saw him pick up the victim's head and "slammed it on the pavement." Vanessa Joan Stewart also saw the three (3) men beating the victim. She saw Mr. Jones take the victim's wallet and also saw one of the men hit the victim's head on the ground. She told the three (3) men that she was going to call the police, but Mr. Jones told her not to, and that he would "make it up to her."

As a result of the beating, the victim lost the keys to his house and truck, his pocket watch with a chain and a knife, as well as his money.

Wayne Ball of the Newport Police Department was told by dispatch to watch for a cream-colored Chevrolet Malibu that had been involved in a crime. Dispatch also told him the names of the three (3) men involved in the crime, the defendant, his brother and Mr. Jones. Officer Ball spotted the car and began a pursuit of the car. The car refused to stop, but Bell ran the tag and found out it belonged to Mr. Jones. Officer Lynn Shults of the Newport Police joined the high speed pursuit. The car was eventually abandoned and the occupants fled before the police caught up with the vehicle.

Detective Jimmy Greg of the Newport Police Department went to the scene where the car was abandoned. There Greg found the defendant in the area and arrested him. He found that the defendant had $703 in his possession consisting of seven (7) one hundred (100) dollar bills , a two (2) dollar bill and a one (1) dollar bill. When Mr. Jones was arrested, the police found $886 on his person, consisting mostly of one hundred (100) dollar bills.

On April 3, 1995, the defendant was indicted by the grand jury of Cocke County for especially aggravated robbery. After many delays, a trial was held on January 15 and 16, 2003. The jury found the defendant guilty of aggravated robbery. At the conclusion of the sentencing hearing, the trial court sentenced the defendant to twenty (20) years as a Range II multiple offender. The defendant filed a motion for new trial on June 27, 2003, which was denied by written order on January 13, 2004. The defendant filed a timely notice of appeal.

## ANALYSIS

The defendant argues four (4) issues on appeal: (1) whether the evidence is sufficient to support a conviction for aggravated robbery; (2) whether the trial court erred by failing to instruct the jury on lesser-included offenses of assault and aggravated assault; (3) whether the trial court improperly sentenced the defendant; and (4) whether the defendant was denied his right to a speedy trial.

**Sufficiency of the Evidence**

The defendant's first issue is that the evidence is insufficient to support the jury's verdict of guilt. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" state's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the state "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The defendant argues that only three (3) witnesses testified regarding the defendant's direct involvement in the incident, the victim, Rhonda Carr and Vanessa Stewart. He then argues that these witnesses are not credible because they had all been drinking. He also argues that the two (2) women both have prior criminal convictions. As noted above, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). Obviously, the jury credited the testimony of the victim, Ms. Carr and Ms. Stewart. Evidence of the victim's and the witnesses' intoxication as well as the women's prior convictions was presented to the jury. Nevertheless, the jury found the victim's and the witnesses' testimony credible. We cannot substitute our judgment for that of the jury. Therefore, the defendant's argument in regard to this issue is without merit.

The defendant next argues that the evidence presented at trial does not prove an intentional or knowing theft of property. The defendant points out that there is no direct testimony to support the fact that the defendant actually took money from the victim. We have reviewed the record and agree with the defendant that no witness specifically stated that he/she saw the defendant take money from the victim. However, there is circumstantial evidence to support the jury's conclusion. The defendant along with the two (2) other participants was seen beating the victim. The defendant also fled the scene of the robbery with the two (2) other participants. The defendant was found near the

getaway car with one (1) of the other participants. When the defendant was found, he had $703, mostly in one hundred dollar bills. The victim had around $2,400 in one hundred dollar bills at the time of the robbery and split three (3) ways that would yield $800 to each robber. Therefore, this amount is consistent with the proceeds from the robbery of the victim. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this Court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court does not attempt to re-weigh or re-evaluate the evidence. State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002); Bland, 958 S.W.2d at 659. Likewise, this Court will not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. State v. Elkins, 102 S.W.3d 578, 582 (Tenn. 2003); Reid, 91 S.W.3d at 277. We conclude that the jury could have reasonably inferred that the defendant was a participant in the robbery. For this reason, the defendant's argument with regard to this issue is without merit.

The defendant next argues that the evidence cannot support aggravated robbery committed by serious bodily injury. There are two (2) ways in which the State can prove aggravated robbery. Either the robbery was (1) accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or (2) the victim suffered serious bodily injury. Tenn. Code Ann. § 39-13-402. In the case sub judice, the trial court instructed the jury on the second choice, robbery where the victim suffers serious bodily injury. "Serious bodily injury" is defined as "injury which involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39-11-106(34).

The victim and a treating physician testified regarding the victim's injuries. The victim stated that as a result of the incident he sustained a broken jaw and a plate was put in his head. He also stated that his jaw was wired shut for six (6) to eight (8) weeks. He was unable to eat solid food during this time. The victim also had to keep a pair of wire cutters with him to cut his jaws free in case he vomited so that he would not choke. The victim testified that he was in the hospital as a result of these injuries for two (2) to three (3) weeks. An emergency room physician, who treated the victim immediately after the incident, also testified at trial. Dr. Constantino Diaz-Miranda stated that the victim had bruising of the skull and bluish discoloration on the left and right sides of his face. Dr. Diaz-Miranda said that the victim had difficulty opening his mouth and complained of severe pain when he tried to open his mouth.

Under Tennessee Code Annotated section 39-11-106(34) the definition of "serious bodily injury" included "[e]xtreme physical pain" and "[p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." We conclude that a broken jaw that was wired shut for six (6) to eight (8) weeks constitutes serious bodily injury.

The defendant argues that State v. Sims, 909 S.W.2d 46 (Tenn. Crim. App. 1995), is a similar situation. In Sims, a panel of this Court found the victim's broken nose, bruised cheek and loss of

two (2) front teeth did not constitute a serious bodily injury. Sims, 909 S.W.2d at 49-50. However, the case sub judice is distinguishable from Sims. In Sims, the victim was in the hospital from 11:15 p.m. to 1:00 a.m. The victim in Sims was not even given any pain medication, although she was given a sedative. The victim stated that her two (2) bottom front teeth began to hurt a few days after the incident, and she went to a dentist who pulled her teeth. We stated that the loss of her teeth did constitute protracted disfigurement, however, the loss of her teeth was not proven to have been caused by the robbery in question. In the present case, the victim was in the hospital for two (2) to three (3) weeks and had his jaw wired shut for six (6) to eight (8) weeks. There is no question that the victim's injuries were the direct result of a beating at the hands of the defendant and his cohorts. We find that there was sufficient evidence to support the jury's finding of serious bodily injury.

Therefore, we find that the evidence was more than sufficient to support the defendant's conviction for aggravated robbery.

### Lesser-Included Offenses

At the conclusion of the State's case, the trial court concluded that instruction for aggravated robbery, facilitation of aggravated robbery, robbery and facilitation of robbery were appropriate in this case. On appeal, the defendant argues that the trial court erred when it did not instruct the jury on the lesser-included offenses of assault and aggravated assault. The State argues that the defendant has waived this issue because the defendant did not request an instruction on either assault or aggravated assault at trial.

When reviewing a trial court's failure to instruct on lesser-included offenses, it is a mixed question of law and fact. State v. Marcum, 109 S.W.3d 300, 302 (Tenn. 2003) (citing State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001)). Therefore, we review such questions de novo, with no presumption of correctness. Id.

The legislature amended Tennessee Code Annotated section 40-18-110 which sets out the procedural requirements for requesting an instruction for a lesser-included offense and when a defendant may appeal from the trial court's failure to instruct on a lesser-included offense. These provisions apply to trials conducted after January 1, 2002. The case sub judice was conducted on January 15 and 16, 2003. Therefore, the amended provisions apply to this case. Tennessee Code Annotated section 40-18-110(a)-(c) (2003) provides:

(a) When requested by a party in writing prior to the trial judge's instructions to the jury in a criminal case, the trial judge shall instruct the jury as to the law of each offense of the offense charged in the indictment or presentment. However, the trial judge shall not instruct the jury as to any such offense unless the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser included offense. In making this determination, the trial judge shall view the evidence liberally in the light most favorable to the existence of the lesser included

-5-

offense without making any judgment on the credibility of such evidence. The trial judge shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense.

(b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.

(c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal.

Tenn. Code Ann. § 40-18-110(a)-(c) (2003).

The defendant did not request the trial court to include the complained of lesser-included offenses in the instructions to the jury either in writing or orally. Under this statute, the defendant's issue would, therefore, be waived. However, a panel of this Court has held that this amendment to Tennessee Code Annotated section 40-18-110 is unconstitutional. In State v. Robert Page, No. W2003-01342-CCA-R3-CD, 2004 WL 3352994 (Tenn. Crim. App., at Jackson, August 26, 2004), perm. app. granted (Tenn. Jan. 18, 2005), we stated:

[W]e are constrained to hold that the waiver provision of Tennessee Code Annotated section 40-18-110 is an unconstitutional abrogation of a criminal defendant's constitutional right to have the jury charged on all offenses included within the indicted offense and supported by the proof adduced at trial. Accordingly, we hold that the Defendant's failure to request an instruction . . . does not waive the Defendant's right to have the jury so instructed.

Page, 2004 WL 3352994, at *14. This Court then went on to analyze the defendant's issue under a harmless error analysis. Moreover, even when this Court has stated that a lesser-included offense issue is waived because of the amended statute, the majority of cases have also addressed the issue on the merits. See State v. Curtis Buford, No. W2003-00370-CCA-R3-CD, 2004 WL 385200, at *4-6 (Tenn. Crim. App., at Jackson, Mar. 2, 2004); State v. Nesha Newsome, No. W2002-01306-CCA-R3-CD, 2003 WL 23100597, at *4-7 (Tenn. Crim. App., at Jackson, Dec. 30, 2003); State v. Brian Larice Cureton, No. M2002-00835- CCA-R3-CD, 2003 WL 22303084, at *11-12 (Tenn. Crim. App., at Nashville, Oct. 8, 2003). We agree with this Court's opinion as written in Page and therefore analyze the defendant's issue under a harmless error analysis.

**Lesser-Included Offense Analysis**

The test to determine whether an offense is a lesser-included offense of the indicted offense was articulated in the supreme court decision of State v. Burns, 6 S.W.2d 453 (Tenn. 1999). Under the Burns test, an offense is a lesser-included offense of the greater indicted offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or
(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
(1) a different mental state indicating a lesser kind of culpability; and/or
(2) a less serious harm or risk of harm to the same person, property or public interest; or
(c) it consists of
(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id. at 466-67.

### Aggravated Assault

Aggravated robbery, as charged in the case sub judice requires a robbery, "the intentional or knowing theft of property from the person of another by violence or putting the person in fear," Tennessee Code Annotated section 39-13-401, "where the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402(a)(2). Aggravated assault occurs when an individual, "[i]ntentionally or knowingly commits an assault . . . and: (A) Causes serious bodily injury to another; or (B) Uses or displays a deadly weapon; or (2) Recklessly commits an assault . . ., and: (A) Causes serious bodily injury to another; or (B) Uses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102 (a).

We have previously determined that aggravated assault is a lesser-included offense of aggravated robbery based upon the use of a deadly weapon. See State v. James Eric Alder, No. M1999-02544-CCA-R3-CD, 2000 WL 1606588 at *8 (Tenn. Crim. App., at Nashville, Oct. 27, 2000). However, the instant case hinges upon the occurrence of a serious bodily injury to the victim. As it pertains to this case, aggravated robbery requires the intentional theft of property from a person where serious bodily injury occurs. Aggravated assault requires the defendant to intentionally or knowingly assault a victim and cause serious bodily injury.

In State v. Aaron Benard Gray, No. 02C01-9707-CC-00270, 1998 WL 211791 (Tenn. Crim. App., at Jackson, May 1, 1998), with regard to aggravated assault being a lesser-included offense of aggravated robbery, we stated:

[T]he offense of aggravated robbery requires proof of a theft of property, whereas aggravated assault does not. However, the offense of aggravated assault by causing another to reasonably fear imminent bodily injury by the use of a deadly weapon does not require proof of any additional element distinct from the elements of aggravated robbery accomplished with a deadly weapon.

Aaron Benard Gray, 1998 WL 211791 at *2-3.

The same could be said for the offenses of aggravated robbery and aggravated assault based upon serious bodily injury.

It is clear that the elements for aggravated robbery contain the elements required for aggravated assault. Therefore, under part (a) of the Burns test, aggravated assault is a lesser-included offense of aggravated robbery.

### Assault

The same analysis compels the conclusion that assault is a lesser-included offense of aggravated robbery. Assault is found at Tennessee Code Annotated section 39-13-101(a). It is defined as, "(1) [i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another; (2) Intentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury; or (3) Intentionally or knowingly cause[ ]physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Tenn. Code Ann. § 39-13-101. We have already set out the elements for aggravated robbery above. As with aggravated assault, the elements of assault are contained within the elements of aggravated robbery. Therefore, under part (a) of the Burns test, assault is a lesser-included offense of aggravated robbery.

### Harmless Error Analysis

The analysis does not stop with whether or not an offense is a lesser-included offense. In State v. Ely, 48 S.W.3d 710 (Tenn. 2001), our supreme court stated that after we determine whether the complained of offenses are actually lesser-included offenses, we are then required to determine whether failure to instruct on these offenses is harmless error beyond a reasonable doubt. This requirement has since become the tool with which a reviewing court determines whether the failure to instruct on a lesser-included offense is reversible error. More recently, our supreme court has elaborated on when the failure to instruct on a lesser-included offense is harmless error beyond a

reasonable doubt. In State v. Richmond, 90 S.W.3d 648 (Tenn. 2002), our supreme court stated that, "In [State v.] Allen [69 S.W.3d 181 (Tenn.2002) ], we reemphasized the principle that the failure to instruct on a lesser-included offense is harmless beyond a reasonable doubt when the 'omitted element is uncontested and supported by overwhelming and uncontroverted evidence.'" Richmond, 90 S.W.3d at 661. Our supreme court also stated that to be harmless error, the error must not affect the outcome of the trial. Id.

The element omitted from the elements of aggravated assault and assault is the intentional theft of property from a person. Under Richmond, we must determine whether the evidence was overwhelming and uncontroverted to prove that the defendant was culpable in the theft of the victim's money.

At trial, the State presented several witnesses to the beating and the arrest of the defendant following the police chase. We have found on the basis of this testimony that there was sufficient evidence to convict the defendant of aggravated robbery. There were witnesses who saw the defendant pull the victim out of the bar and witnesses who saw the defendant actually beating the victim. Also, there were police officers who testified to finding the defendant with one of his cohorts and both men possessed several hundred dollars in one hundred dollar bill increments. There was sufficient evidence for a jury to conclude that the defendant actually took the money from the victim. We now conclude that this evidence is overwhelming and uncontroverted so that a jury could not conclude that the defendant participated in the beating of the victim, but did not rob the victim. The evidence that the defendant was seen beating the victim and was then found with $703 in one hundred dollar bills is overwhelming and convinces us that any error in the failure to charge assaultive offenses was harmless beyond a reasonable doubt.

Additionally, the jury was instructed on facilitation of aggravated robbery and facilitation of robbery. If the jury concluded that the defendant was criminally responsible to a lesser degree, i.e. involved in the beating, but not stealing the money, the panel had a choice for a lesser crime but nevertheless decided that the defendant was guilty of aggravated robbery.

For the reasons stated above, we conclude that the trial court's failure to instruct on aggravated assault and assault was harmless error, and the outcome of the trial would not have been different had the jury been instructed on these two (2) offenses.

### Sentencing

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for

rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

In balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.

The trial court made the following findings at the conclusion of the sentencing hearing:

Well, the Court finds that he's a Range 2 Offender, may even be Range 3, but certainly he has additional convictions in addition to those necessary to qualify him as a Range 2 Offender.

The Court further finds that he is a leader, or he was a leader in this offense.

And looking at the totality of the case, the totality of the facts and how this man was beaten and robbed by three individuals. They basically waylaid him and robbed him and beat him unmercifully and the Court thinks that the two enhancement factors that the Court has used, especially the additional convictions because his record is awful and this Court thinks based upon that and the totality of the facts of the case that a sentence of twenty years is appropriate and I sentence him to twenty years as a Range 2 Offender.

I think to do otherwise would deprecate the seriousness of this offense. So, that will be the sentence of the Court.

The defendant argues that the trial court erred in applying enhancement factor (3), that the Defendant was a leader in the commission of the offense. Tenn. Code Ann. § 40-35-114(3). The defendant argues that there is nothing in the record to support the trial court's application of this enhancement factor. He goes on to argue that the defendant was such a minor participant in the incident that the trial court should have actually applied the mitigating factor that the defendant's role in the offense was minor. Tenn. Code Ann. § 40-35-113(4).

The State argues that there is ample support for the trial court's application of the enhancement factor (3). The State points to the fact that a witness testified that she saw the

defendant speak to his brother and hand him a gun before the incident occurred. Another witness stated that the defendant was the perpetrator who told him that he, the witness, did not need to see what the perpetrators were doing to the victim and that he should go back inside. The State also contends that Jimmy Don Jones, one of the defendant's cohorts, made a statement to the police and later testified at trial. Mr. Jones stated that the defendant took his car and drove it the night of the robbery. Also, according to Jones, the defendant distributed the money and told Mr. Jones to hold the gun that the men had with them during the robbery.

We agree with the State that there is sufficient evidence to support the trial court's findings. As we stated above, there is a presumption of correctness accompanying the trial court's decision so long as the trial court considered all the sentencing principles and relevant facts and circumstances. The trial court followed the requirements set out in our statutes. Having reviewed the record in this case, we have find nothing which would lead us to conclude that the defendant's sentences are not supported by the record.

Therefore, this issue is without merit.

### Speedy Trial

The defendant's final issue is that he was denied his right to a speedy trial. It was eight (8) years from the time of the defendant's arrest until he was tried for these charges. According to the defendant, the trial was continued fourteen (14) times through no fault of his own. He filed three (3) speedy trial motions. The defendant has also had five (5) different appointed attorneys.

The trial court made the following findings after the hearing on the defendant's motion to dismiss the charges for the violation of his rights to a speedy trial:

> I would be less than candid if I did not share [the defendant's] frustration with the somewhat lengthy delay in this case. And I totally agree with that. And how specifically that it got to this point is, in one sense, a multifaceted situation. Certainly Mr. Tucker, his first attorney's illness and subsequent death. In fact, the case very well may have been set for trial. I don't know that. I'm not making a finding on that.
> . . . .
> Okay, Now, okay, I had remembered that, and I'm glad you all told me that. And for whatever reason the attorneys and – stated in their motions or otherwise filed motions to withdraw.
> Then finally, when Mr. Fletcher Ervin was appointed and he filed a motion for – to dismiss on issues of speedy trial. And, in fact, the case was set again. The court of criminal appeals had ruled on that matter or said they were not going to rule on that matter, and then the case was set again, and Mr. Ervin filed a motion in the

-11-

supreme court. I think, to ask them to hear it, and they subsequently refused to hear that.

And so part of the – part of the delay, only, was occasioned by illness of [the defendant's] counsel; part of it was the changing of counsel who, for conflicts or whatever, wanted to withdraw; and part of it was because one time the case was set, the Court either had an illness or something with his mother – my mother. And then once the case was continued again because Mr. Ervin wanted the appellate courts to have an opportunity to rule on the speedy trial issue then.

Then, subsequent to that, the Court knows that [the defendant] filed a complaint against Mr. Ervin that necessitated his withdrawal. And, therefore, Mr. Moore was appointed and assisted the Court and the system in taking on this case.

The Court certainly – there is enough blame all the way around on this. But I see nothing as it relates to the State of Tennessee that invokes the penalties of failure to bring to trial. Now, as to why [the defendant] – and, in fact, I know shortly after Mr. Ervin was appointed in the case, about that time apparently – and certainly unbeknownst at that time to this judge – to me – there was an attempt to send [the defendant] back to the penitentiary under the order that Judge Hooper had signed. And I believe, if I'm not mistaken – and [the defendant], you can correct the Court – but I believe I ordered you held here – didn't I? – for a period of time, so Mr. Ervin could talk to you. Is that a fair statement?

. . . .

Yeah, okay. That's a fair statement. Okay, very good. Very good, I . . .

. . . .

Yes, sir. You're okay. I accept that. The other issue, of course, obviously the Court finds that there is delay in this case. The other issue is the prejudice prong of that.

As to the one witness who is in Jefferson County, of course, he is – I would assume that – that he would be available, you know, had he been subpoenaed. As to the witness who had – who is sick, I believe, and in Virginia –

. . . .

[T]he Court finds also that, as in the case of the other witness, that a deposition certainly could have been taken.

. . . .

Well, no, now I'm in the process of ruling now, [defendant]. I have – certainly the Court wants to be kind to you and hear everything, but the Court must rule.

That the Court does not think that, based upon the various delays for the various reasons, that the Court should impose the severe penalty of dismissal of these charges. And, so, for the reasons stated, the Court must respectfully overrule the motion to dismiss for failure of a speedy trial, finding that this is not the fault of the prosecution as to the delays.

Now, again, there's no question – there is no question that there have, in one sense, been a comedy of errors, as it – is a way I guess you could describe it, with different lawyers withdrawing and conflicts or whatever. And I don't like – and, in fact, certainly a that time that Judge Hooper recused himself, the criminal docket was being handled differently than it is – has been the past few years. And because of Judge Hooper's recusal, then that has lengthened the times that this judge would be available, because Judge Hooper is now handling most of the criminal cases in this county for one of these very reasons, so that there is not such delays in us traveling the circuit and having cases delayed that much. But when Judge Hooper has to recuse himself, then, scheduling-wise, it does pose a problem for the rest of the judges.

But, anyway, be that as it may, this Court cannot find that the delays in this case have been caused by the prosecution, and that, based upon all the facts and circumstances, as bizarre, quite candidly, as they may be, the Court does not feel like that the constitutional prohibition against unreasonable delay, as interpreted by our courts and by the U.S. Supreme Court, has been violated. So for those reasons the motion is respectfully overruled.

The United States and Tennessee Constitutions guarantee the criminal defendant the right to a speedy trial. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; State v. Utley, 956 S.W.2d 489, 492 (Tenn. 1997). The right to a speedy trial is also statutory in Tennessee. See Tenn. Code Ann. § 40-14-101. In addition, the Tennessee Rules of Criminal Procedure provide for the dismissal of an indictment, presentment, information or criminal complaint "[i]f there is unnecessary delay in presenting the charge to a grand jury against a defendant who has been held to answer to the trial court, or if there is unnecessary delay in bringing a defendant to trial. . . ." Tenn. R. Crim. P. 48(b). The Tennessee Supreme Court has stated that "formal grand jury action or the actual restraints of an arrest are required" to trigger speedy trial analysis. Utley, 956 S.W.2d at 493. This is because "it is at this stage of arrest and grand jury action that the significant interests served by the right to a speedy trial are most directly implicated: the protection against oppressive pre-trial incarceration and the reduction of anxiety and concern caused by unresolved charges." Id.

When an accused seeks the dismissal of charges based upon the denial of the constitutional right to a speedy trial, the accused must establish a period of delay that is "presumptively prejudicial." State v. Jefferson, 938 S.W.2d 1, 12 (Tenn. Crim. App. 1996) (citing Doggett v. United States, 505 U.S. 647, 651 (1992); Barker v. Wingo, 407 U.S. 514, 530 (1972)). The length of the delay is dependent upon the peculiar circumstances of each case, and the delay that can be tolerated for "an ordinary street crime" is generally much less than for a serious, complex felony charge. Barker, 407 U.S. at 530-31. A delay of one (1) year or longer marks the point at which courts deem the delay unreasonable enough to trigger further inquiry. Doggett, 505 U.S. at 652 n. 1; Utley, 956 S.W.2d at 494. If this threshold is crossed, a balancing test determines the merits of the speedy trial issue. In State v. Bishop, 493 S.W.2d 81, 83-85 (Tenn. 1973), the Tennessee Supreme Court recognized and adopted the balancing test the United States Supreme Court set forth in Barker in which four factors must be balanced. The factors are: (1) the length of the delay; (2) the reasons for

the delay; (3) the accused's assertion of the right to speedy trial; and (4) the prejudice resulting from the delay. Barker, 407 U.S. at 531; Bishop, 493 S.W.2d at 83-84.

This court also recognizes that findings of fact by the trial judge are presumed correct and may only be overcome by a preponderance of the evidence contrary to that finding. Tenn. R. App. P. 13(d). The Tennessee Supreme Court has held that "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the trial court level is entitled to the "strongest legitimate view of the evidence" as well as "all reasonable and legitimate inferences that may be drawn from that evidence." Id.

(1) The Length of the Delay

As noted above, a delay of one year or longer "marks the point at which courts deem the delay unreasonable enough to trigger the Barker inquiry." Doggett, 505 U.S. at 652 n. 1; see also Utley, 956 S.W.2d at 494. The defendant's indictment is dated April 3, 1995, and his trial began on January 15, 2003. This was a delay of almost eight (8) years. The delay in this case is clearly over one (1) year and, therefore, meets the threshold for consideration of the other factors.

(2) The Reason for the Delay

Reasons for the delay of prosecution fall within four categories: (1) intentional delay to gain a tactical advantage over the defense or delay designed to harass the defendant; (2) bureaucratic indifference or negligence; (3) delay necessary to the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in by the defense. State v. Wood, 924 S.W.2d 342, 346-47 (Tenn.1996). "The third type of delay is, by definition, justifiable and is not weighed against either party." Wood, 924 S.W.2d at 347.

The trial court summed up the reasons for the many delays between the defendant's indictment and the commencement of the defendant's trial. There were many reasons included in the trial court's findings. The defendant failed to appear for court dates following his release on bond, and a capias was issued for his arrest. The defendant's initial trial counsel, who represented him in 1995 and 1996 was seriously ill and eventually succumbed to his illness and passed away in April of 1997. There were also issues with the recusal of a trial judge. In 1999, the defendant was represented by trial counsel and trial was set for September 30, 1999, but a defense motion was filed for a continuance. The trial was reset for January 2000. For a reason not included in the record, the trial was again reset for April 25, 2000, but a capias was issued because the defendant again did not appear in court.

Then on March 8, 2001, the defendant filed a motion to dismiss for lack of speedy trial. The trial court denied the motion on April 30, 2001. The defendant then filed an interlocutory appeal to this court and asked for a continuance during the pendancy of his appeal. This Court denied the

defendant's request for an interlocutory appeal by order dated June 25, 2001. In that order, we stated:

> [W]e observe that there are several long periods of delay for which no explanation is provided and it is unclear to whom these delays may be attributed. Further, the application notes that the defendant has been represented by four different appointed counsel since his initial pre-trial appearance in 1994 but does not further explain the reason or resulting delays, if any, from his frequent changes of counsel. Finally, it appears from the record that the defendant first asserted his right to a speedy trial in March 2001. A hearing on his motion to dismiss was held April 30, 2001, and denied. We cannot conclude from the content of the application that the defendant has been deprived of his right to a speedy trial. Moreover, although the defendant asserts that an interlocutory appeal may prevent needless litigation and should be granted in view of the prejudice he has already suffered, this court concludes that to grant an interlocutory appeal under these circumstances might serve to protract, rather than shorten, the proceedings.

State v. Mitchell Presnell, No. E2001-01318-CCA-R9-CD (Tenn. Crim. App., at Knoxville, June 25, 2001). After we denied the defendant's interlocutory appeal, he then requested a continuance so that he could file an application for permission to appeal to our supreme court. There is no documentation in the record that this application was denied, but we assume from the continuing nature of the proceedings that it was denied. The defendant then filed a pro se motion for speedy trial on February 4, 2002. Then additional continuances followed and another motion for speedy trial on May 17, 2002. There were also a few other motions for continuances filed by the defense.

We conclude that many of the delays in the prosecution of the defendant were actually caused by the defendant or at the least acquiesced to by the defendant. There is no evidence that the State was delaying prosecution of the defendant to gain a tactical advantage or to harass the defendant. The delays did not occur because of bureaucratic indifference. The delay was in some part necessary to the fair and effective prosecution of the case because many of the delays were for the withdrawal and subsequent appointment of counsel for the defendant or the recusal of a trial judge in one instance because of a perceived conflict and another because the trial judge's mother was seriously ill. In addition, the defendant filed an interlocutory appeal which also delayed his trial. This is the third type of delay as set out in Wood and as we stated above, is justifiable and not weighed against either party. The majority of the remaining delays fall into the fourth type as set out in Wood. More than once the defendant did not appear for his court dates and a capias had to be issued. Several times the defendant filed a motion for continuance. For these reasons, we conclude that the reasons for the delay do not weigh against the State and in favor of the dismissal of the charges against the defendant.

-15-

(3) The Accused's Assertion of the Right to a Speedy Trial

The Tennessee and United States Supreme Court have both recognized that "an accused who is unaware that charges are pending against him or her, as is often the case where an indictment has been sealed and not served, cannot be penalized for his or her failure to assert the speedy trial right." Wood, 924 S.W.2d at 351 n. 13 (Tenn. 1996) (citing Doggett, 505 U.S. at 652-54).

The defendant was quite aware of the charges against him. The indictment was not sealed. The defendant was indicted on May 3, 1995, but did not assert his right to a speedy trial until March 8, 2001 through the filing of a motion to dismiss for lack of a speedy trial. This was the first of three (3) requests, but the fact remains that the defendant waited almost six (6) years from the time of his indictment until his first assertion of his right. We conclude that the defendant was well aware of the charges pending against him, and he did not mitigate the effect of the delay in his failure to raise the issue earlier in the proceedings.

(4) Prejudice

The final factor to be reviewed in determining whether a defendant's right to a speedy trial has been violated is whether the defendant has been prejudiced due to the delay. Wood, 924 S.W.2d at 348; Bishop, 493 S.W.2d at 84. This final factor is also the most important of the four (4) balancing factors. Wood, 924 S.W.2d at 348. In determining this remaining factor, we focus on (1) any undue and oppressive incarceration, (2) the anxiety accompanying a public accusation, and (3) any impairment of the defendant's ability to prepare his defense. Bishop, 493 S.W.2d at 85; State v. Kolb, 755 S.W.2d 472, 475 (Tenn. Crim. App. 1988). In applying the third of these considerations, the impairment of defense, the Tennessee Supreme Court and the United States Supreme Court have acknowledged:

> [I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. . . . [E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of the delay.

Wood, 924 S.W.2d at 348 (citing Doggett, 505 U.S. at 655) (citations omitted).

The defendant argues that he was prejudiced in several ways. He argues that in the delay the proceedings and the multiple changes in his representation resulted in the loss of the preliminary hearing tape. Also, the defendant states that he was unable to present the testimony of a few witnesses and that the passage of time had diminished the memories of witnesses, many of whom were intoxicated at the time of the incident. This argument was presented to the trial court. As quoted above, the trial court found that these factors did not result in prejudice to the defendant since

-16-

he could have taken the deposition of a few of the witnesses in question. In addition, the defendant did not subpoena another witness, and the trial court questioned the witness's unavailability.

As we have stated above, the trial court's findings of fact are presumed correct on appeal absent a preponderance of the evidence to the contrary. We find that the evidence presented at the speedy trial hearing preponderates in favor of the trial court's findings. While we agree that there was a substantial delay between the defendant's indictment and his trial, the defendant's situation does not tip the balance in favor of dismissal of the charges. The delays were largely out of the State's control, and many were even caused by the defendant himself. The defendant knew of the pending charges. The defendant waited several years to assert his right to a speedy trial. Most importantly, the delay has not been so prejudicial that his charges should be dismissed.

Therefore, this issue is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE